**COMMONWEALTH OF PENNSYLVANIA,**
Appellant,

v.

**Patricia McCARTHY, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 6, 2003.
Filed March 24, 2003.

Donald M. Leeth, Assistant District Attorney, Stroudsburg, for Commonwealth, appellant.

Michael A. Ventrella, Public Defender, Stroudsburg, for appellee.

Before BENDER, MONTEMURO * and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 The Commonwealth brings this appeal from an order of the court of common pleas, Monroe County, that suppressed the oral and written statements of appellee Patricia Ann McCarthy. For the reasons that follow, we affirm.

* Retired Justice assigned to the Superior Court.

¶ 2 A suppression hearing on June 17, 2002, established the following facts. On December 27, 2001, Detective Christopher James Wagner of the Pocono Mountain Regional Police Department responded to a call from the North Campus of the Pocono Mountain Intermediate Elementary School. From the school principal, Wagner learned of thefts of a credit card, as well as currency and prescription medication, from a school office. Wagner conducted interviews at the school of faculty and staff who had access to the office. The first interview, on January 22, 2001, was primarily to collect samples of handwriting. Wagner read a police form that included the statement: "I am not under arrest. I fully understand that I am free to leave." He also read each person a "consent to voluntary search" form. He asked all of them if they understood. All stated that they did understand. Wagner proceeded to explain to the employees that they had the right to refuse the search and did not have to provide writing samples. Appellee signed the consents. N.T., 6/17/2001, at 3–9. During that interview, appellee denied any knowledge of the thefts.

¶ 3 The police forwarded the handwriting samples to the handwriting analysis department of the State Police Crime Laboratory. Wagner, not a handwriting expert himself, suspected that appellee's handwriting was like that on one of the credit card receipts. He returned to the school on January 24 and again interviewed appellee. He was in plain clothes, not police uniform. He read her the notification of no arrest again, and she signed it again. N.T., 9–13. Wagner proceeded to inform appellee that he suspected her involvement in the thefts, and he advised her that she should cooperate. Appellee first admitted to one theft. After being warned

that it would be unwise to stop cooperating, she admitted to three. After more questioning, appellee stated, "I'll take the blame for the whole thing." N.T., at 16. She also stated that she had trouble remembering specifics because her mind was foggy due to depression and medication.[1] Ultimately, she confessed. N.T., at 17. At the conclusion of the meeting, appellee was free to leave. On January 28, 2002, a criminal complaint charged appellee with forgery,[2] theft by unlawful taking,[3] theft by deception,[4] and receiving stolen property.[5] After the suppression hearing, the court issued its order suppressing the incriminating statements on July 16, 2002.

■ ¶ 4 The scope of review on the issue of suppression of evidence is whether the trial court abused its discretion. We determine whether the factual findings are supported by the record and we reverse if the legal conclusions drawn from those facts are in error. *Commonwealth v. Masters*, 737 A.2d 1229 (Pa.Super.1999).

■ ¶ 5 The Commonwealth argues that the prophylactic rule enunciated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), incorporating the Fifth Amendment protection against self-incrimination, applies only to custodial interrogations. The test for determining whether or not a person is in custody and entitled to the protection of *Miranda* is whether the person "is physically deprived of his or her freedom of action in any significant way or is placed in a situation in which he or she reasonably believes that his or her freedom of action is restricted by... interrogation." *Commonwealth v. O'Shea*, 456 Pa. 288, 292, 318 A.2d 713, 715

(1974). They ask us to conclude that appellee was not in custody, and therefore was not entitled to *Miranda* warnings. They base their arguments on the signed statements, the fact that the interrogation took place in a school office, not the police station, that she had signed a waiver, and that she was never placed in handcuffs.

■ ¶ 6 Our reading of the record leads us to a different conclusion. Wagner admitted that his purpose in the return interview was to get appellee to confess, and that the interview took place in an office with the door closed. N.T., at 21. Wagner told appellee she was a suspect, and that he was confident that the handwriting analysis would establish that she was the one who had illegally used the credit card. Appellee testified that Wagner urged her to confess, promising her that if she did, all she would get would be probation and placement in a rehabilitation program. If she did not, she would receive jail time. If she did not confess, he would arrest her and take her out, in handcuffs, in front of all her friends. Appellee asked for permission to call her husband, and to talk an attorney, and Wagner refused. N.T., at 13, 28–30, 38–39. As she told the court: "I stood up, went to the door, and told him, 'Look, I just want to talk to my attorney,' and he told me, no, this is my window of opportunity; if I walked through that door he would make sure that all the charges stuck and he would embarrass me in front of my friends. That's when I sat down." N.T., at 330.

■ ¶ 7 Our Supreme Court has held that the basic test to determine whether a person is being subjected to a custodial

---

1. At the time of the interview, appellee was taking four thirty-milligram capsules of Paxil two times a day. N.T., at 40.

2. 18 Pa.C.S.A. § 4101(a)(2).

3. 18 Pa.C.S.A. § 3921.

4. 18 Pa.C.S.A. § 3922(a)(1).

5. 18 Pa.C.S.A. § 3925(a).

interrogation that necessitates *Miranda* warnings is whether she is being deprived of her physical freedom in a significant way, or whether she is placed in a situation in which she reasonably believes that her freedom of action is restricted by the interrogation. *Commonwealth v. Turner*, 772 A.2d 970 (Pa.Super.2001), *citing Commonwealth v. Chacko*, 500 Pa. 571, 459 A.2d 311, 314 (1983). The standard is an objective one, with due consideration given to the reasonable impression conveyed to the person being interrogated. *Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078 (1993). A person is considered to be in custody for the purposes of *Miranda* when the officer's show of authority leads the person to believe that she was not free to decline the officer's request, or otherwise terminate the encounter. *Commonwealth v. Witherspoon*, 756 A.2d 677 (Pa.Super.2000). We agree with the hearing court that the facts of the situation prevail over any document that appellee signed.

■ . ¶ 8 In conclusion, appellee also argues that the confession was not freely or intelligently given. The voluntariness of a confession is determined by the totality of the circumstances. *Commonwealth v. Templin*, 568 Pa. 306, 795 A.2d 959 (2002). We conclude that the circumstances of the confession, viewed in their entirety, indicate that it was not freely and voluntarily given. We therefore affirm the order of the court suppressing appellee's statements to police.

¶ 9 Order affirmed.