## Commonwealth v. Brantley

C.P. of Delaware County, No. CP-23 CR-0004728-2011.

*John F.X. Reilly*, for commonwealth.

*Lawrence R. Dworkin*, for defendant.

NILON, *J.*, May 22, 2012—The commonwealth, hereinafter "appellant", argues that the court erred in granting the defendant's motion to suppress evidence. The police conducted a custodial interrogation without providing *Miranda* warnings to the defendant and the defendant never voluntarily consented to the warrantless seizure of her cellular telephone by the police. Therefore, the appellant's contentions are meritless.

## FACTUAL AND PROCEDURAL HISTORY:

This is an appeal from this court's order imposed on December 22, 2011. The nature and history of the case are as follows:

On June 1, 2011, a criminal complaint was filed against the defendant, Kalilah Brantley, and she was charged with: Information A, intercept communications, 18 Pa.C.S. § 5703(1). The basis for this charge stemmed from a work-related meeting between a manager, two employees, and a union steward, all employees of US Airways.

Corporal Keye Wysocki, a Pennsylvania State Police officer of the bureau of criminal investigations assigned to the drug interdiction unit at the Philadelphia International Airport, testified at the suppression hearing. He testified

that he knew Renee Burrows, a manager employed by US Airways in the Philadelphia International Airport. At the beginning or middle of January of 2011, Ms. Burrows told him that she believed an employee of hers had surreptitiously recorded a conversation that they had during an employee-manager meeting. The meeting took place on December 30, 2010 and the four people present included: Ms. Burrows, Ms. Brantley (the defendant), another employee, and a Union Representative for US Airways employees. The purpose of the meeting was a "coaching session" with both employees. The meeting took place in the US Airways office in Terminal A, which is located in the Philadelphia International Airport in Delaware County, Pennsylvania. (N.T.12/21/11 pp.25-27, 38-39).

At the preliminary hearing held August 10, 2011, before magisterial district judge Edward W. Christie, Ms. Burrows testified that the meeting became heated:

Kalilah had her cell phone on the table. I didn't think anything of it. All the employees have cell phones. She did have her cell phone out and I did notice her fumbling with it quite a few times. I sat there, and kind of went through the meeting. It got heated a few times, and at a point I decided to step out to make sure that I was staying calm and not yelling at them for anything that was going on, and I didn't want to put that out there. So I excused myself from the room, and when I came back in, I saw her playing with her phone again. And at that point I had questioned her and asked her, you know, are you recording me? Like, what's your phone doing out?

And she said I am recording you. I am, and we all are, and we all have been... At that point I said, here's your coaching. Meetings over.

(N.T. from the preliminary hearing 8/10/11 p.7; attached to the defendant's omnibus motion as exhibit D-1).

Officer Wysocki referred her to a Philadelphia Police Department detective who works in the airport. The detective advised Ms. Burrows that she needed to obtain the recording in order for him to proceed with the case. Thereafter, the Philadelphia detective was not willing to prosecute the case. As a result, officer Wysocki took over the investigation. (N.T.12/21/11 pp. 40-41).

Initially, on or about February 1, 2011, officer Wysocki took a more detailed statement from Ms. Burrows about what took place, who was there, and where it was located. (N.T.12/21/11 pp.27-28, p.41). After meeting with Ms. Burrows, officer Wysocki never applied for or obtained a search warrant to search or seize the contents of the cell phone. (N.T.12/21/11 p. 41). At no time from the beginning or middle of January of 2011, when officer Wysocki first learned of the recording, through the February 8, 2011 interview of Ms. Brantley did officer Wysocki ever apply for or obtain a search warrant to search or seize the contents of the cell phone. (N.T.12/21/11 pp. 41-42).

On February 8, 2011, officer Wysocki and officer Keith Hagen interviewed the defendant in Terminal A of the Philadelphia International Airport, a big open area. Both officers were wearing plain clothes, i.e. jeans, tee-shirts, and sneakers. The two men introduced themselves and

advised Ms. Brantley that they wanted to speak with her regarding an incident that took place with Ms. Burrows. Ms. Brantley asked if she could have a US Airways representative present during the interview. The officer responded that she was welcome to, but it was not a US Airways matter, it was a criminal incident. She asked if she could have an attorney present and officer Wysocki told her she could have an attorney present if she wanted to, but then she proceeded to talk to the officer without an attorney present. The officer then advised Ms. Brantley that "she had recorded Ms. Burrows' conversation with her on her cellular telephone" and he asked her if he could see her cellular telephone. (N.T. 12/21/11 pp.29-31).

Officer Wysocki advised Ms. Brantley that she could either voluntarily give her cellular telephone to him or if she did not want to give it to him; he would apply for a search warrant in order to obtain the recording allegedly on the phone. The officer explained that while applying for a search warrant he would take the phone and keep it in his possession for approximately 2 to 3 weeks. He advised her that he would take the phone so that no evidence could be erased from the phone. (N.T.12/21/11 p.32).

Ms. Brantley advised the officer that she did not want to be without her cell phone for such an extended period of time. Ms. Brantley then made two personal calls, including a call to her mother. She asked if the officer could speak to her mother and he agreed. The officer explained everything that was taking place to her mother. Ms. Brantley had another conversation with her mother and then gave her cell phone to the officers. Then, Ms.

Brantley suggested that officer Wysocki use his cell phone to make an audio recording of the recording she had on her phone. The officer agreed. The two officers and Ms. Brantley proceeded to the employee break-room where she played her audio recordings while officer Wysocki recorded them on his cellular phone. Ms. Brantley told the officer that she made the recordings because she wanted an official record of what was taking place during the meeting. After the recordings were taken off of her phone, Ms. Brantley asked the officers if they would meet with her mother. The officers agreed and went to the common-area of the airport and shook hands with Ms. Brantley's mother. They had a two minute conversation with her, and thanked her for her cooperation. The officers then left the scene. The officers' meeting with Ms. Brantley lasted approximately 45 minutes to one hour. (N.T.12/21/11 pp.32-37).

## PROCEDURAL HISTORY:

On June 1, 2011, a criminal complaint was filed against the defendant, Kalilah Brantley, and she was charged with: Information A, Ontercept Communications, 18 Pa.C.S. § 5703(1). On September 8, 2011, Ms. Brantley was arraigned. On October 11, 2011, an omnibus pretrial motion-motion to suppress evidence was filed. Defense continuances were granted. A hearing was held on the motion to suppress on December 21, 2011. On December 22, 2011, the undersigned issued an order denying defendant's motion to dismiss for lack of jurisdiction and granting defendant's motion to suppress evidence. There was a finding that there were no *Miranda* warnings given

to the defendant, there was an unlawful search and seizure of evidence without a warrant, and as a result all evidence seized should be suppressed.

On January 26, 2012, John F.X. Reilly, esquire entered his appearance on behalf of the commonwealth and filed a notice of appeal to the Superior Court. Consequently, on February 13, 2012, this court directed appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Consequently, on March 5, 2012, appellant filed a concise statement of errors complained of on appeal raising the following issues for appellate review:

1. The defendant was not in custody when the police interviewed her. Because the police did not conduct a custodial interrogation, they were not required to provide a *Miranda* warning to the defendant.

2. The defendant voluntarily consented to the temporary seizure and search of her cellular telephone by the police.

## DISCUSSION:

### I. A. Warrantless Search and Seizure

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Commonwealth v. Blair*, 575 A.2d 593, 596 (Pa. Super. 1990). The purpose of the

Fourth Amendment is to protect individual privacy rights from governmental intrusion. U.S. Const. Amend. 4. Thus, the Fourth Amendment operates to protect privacy interests by prohibiting non-consensual searches without a warrant. Issuance of a warrant, in turn, requires probable cause. *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995).

Under Article I, Section 8 of the Pennsylvania Constitution, a suspect is afforded a greater degree of protection against unlawful searches and seizures than is granted by the 4th Amendment of the United States Constitution. *Commonwealth v. Matos*, 543 Pa. 449, 455, 672 A.2d 769, 771 (1996). The Supreme Court of Pennsylvania has recognized the tenet that Article I, Section 8 of the Pennsylvania Constitution requires that searches and seizures by the commonwealth be permitted only upon obtaining a warrant based upon probable cause issued by a neutral and detached magistrate. *Commonwealth v. Labron*, 543 Pa. 86, 93, 669 A.2d 917, 920 (1995). "In general and where practical, the police are required to obtain a search warrant. Warrantless searches are per se unreasonable, subject to only a few exceptions," *Commonwealth v. Gabrielle*, 409 A.2d 1173, 1177 (Pa. Super. 1979). See also, *Commonwealth v. Holzer*, 480 Pa. 93, 102, 389 A.2d 101, 106 (1978); *Commonwealth v. Rispo*, 487 A.2d 937, 939 (Pa. Super. 1985); *Commonwealth v. Morrison*, 418 A.2d 1378, 1379 (Pa.Super.1980) (en banc). Thus, broadly speaking, searches and seizures conducted without a prior determination of probable cause are unreasonable for constitutional purposes. *Labron*.

Within the workplace context, the United States Supreme Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police. See *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). As with the expectation of privacy of one's home, such an expectation in one's place of work is "based upon societal expectations that have deep roots in the history of the amendment." *Oliver v. United States*, 466 U.S. 170, 178,104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

However, in the case sub judice, no warrant was sought or obtained. Here, there was sufficient information available to officer Wysocki to apply for a search warrant prior to confronting Ms. Brantley and seizing her cell phone but he never sought or obtained a warrant. Officer Wysocki met with the defendant's manager, Ms. Burrows, in January of 2011. (N.T. 12/21/11 p.26). Ms. Burrows informed him that the defendant recorded a conversation they had during an employee-manager meeting. *Id.* The Officer advised Ms. Burrows that it was "a felony" to make such a recording. (N.T. from the preliminary hearing D-18/10/11 p.31). Officer Wysocki advised Ms. Burrows to make a report or complaint with the police and then took her down to the Philadelphia Police Department in order to make a report. (N. T. 12/21/11 p. 40). After the officer realized that the Philadelphia police were not going to "do anything in the investigation that I would." Then, officer Wysocki took over the investigation. (N.T. 12/21/11 p.28). Thereafter he took a more detailed statement from Ms. Burrows on or about February 1, 2011. (N.T. 12/21/11

pp.28, 41).

After three separate contacts with Ms. Burrows, and after interviewing Ms. Burrows and obtaining all of the information he needed to proceed to seize the evidence from the defendant, Officer Wysocki never applied for or obtained a warrant to seize the recording on the phone. (N.T. 12/21/11 p.41). On February 8, 2012, the officer interviewed the defendant. The defendant was the target of his investigation. He already knew before the interview that the defendant had used her personal cell phone to record the meeting. He had told the defendant's boss that recording the meeting was a felony and a violation of the wiretapping act. The officer admitted that prior to his interview with the defendant, he intended to seize the phone from the defendant:

> Q. All right. So you did intend to take her phone if she didn't give it to you, is that right?
>
> A. That's right. If she didn't voluntarily give me the phone, I would have taken it from her.

(N.T. 12/21/11 p.47).

Based upon all of the information that the officer had prior to the interview with the defendant and based upon his intention to seize the phone at the interview, there was sufficient information available to the officer to apply for a search warrant prior to confronting Ms. Brantley. However, he never applied for a warrant and proceeded to interview her and seize her cell phone without a warrant. This was an unreasonable search and seizure and the

evidence obtained should be suppressed.

## B. Exigent Circumstances

Exigent circumstances arise only "where the need for prompt police action is imperative, either because evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger to his person by checking for concealed weapons." *Commonwealth v. Holzer,* 389 A.2d 101, 106. See also, *Commonwealth v. Rispo,* 487 A.2d 937, 939 (Pa. Super. 1985); *Commonwealth v. Hinkson,* 461 A.2d 616, 618 (Pa. Super. 1983) (allocatur denied). The burden is on the commonwealth to "present clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent ... *and that the exigency was in no way attributable to the decision by the police to forego seeking a warrant*" *Commonwealth v. Davis,* 411 A.2d 250, 252 (Pa. Super. 1979) (emphasis added). See also, *Commonwealth v. Rispo,* supra, at 940. Moreover, "[a]ll decisions made pursuant to the exigent circumstances exception must be made cautiously, for it is an exception which by its nature can very easily swallow the rule unless applied in only restricted circumstances." *Commonwealth v. Daniels,* 421 A.2d 721, 725 (Pa. Super. 1980).

Here, there is no evidence of any exigencies which would justify the absence of a warrant in this case. The officer testified: "I explained to her that I would have to take the phone and keep it in my possession. That way no evidence if it was on there could be erased from the

phone." (N.T. 12/21/11 p.32). In *Commonwealth v. Rispo*, supra at 942-43, the Superior Court held that exigent circumstances did not exist in a situation where a house could be watched by one officer while another obtained a warrant. In the case sub judice, there were two officers present for the interview and one could have remained with the phone while another obtained a warrant. (N.T. 12/21/11 p.29). Thus, the police officers could easily have prevented evidence from being destroyed while they obtained a search warrant.

The commonwealth failed to introduce any evidence that the police or public were in danger if the officers did not act immediately. The officers had all of the information that they needed to apply for a warrant prior to interviewing Ms. Brantley, but they never applied for a warrant. Officer Wysocki believed a crime had been committed and believed Ms. Brantley committed the crime prior to his interview with her. Nevertheless, he never obtained a warrant. (N.T. 12/21/11 p.39, p.41). Accordingly, the warrantless seizure of the cell phone was not justified by exigent circumstances. The evidence seized in violation of Ms. Brantley's constitutional rights was properly suppressed.

C. Appellant argues that Ms. Brantley was not in custody when the police interviewed her and thus they were not required to provide a *Miranda* warning to her

Ms. Brantley was charged solely with violating 18 Pa.C.S. § 5703(1), intercept communications, a felony of the third degree. The statute provides in part:

§ 5703. Interception, disclosure or use of wire, electronic or oral communication.

Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

(1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication.;

The statute defines "oral communication" in section 5702 as:

Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation.

Initially, this case has a troubling aspect to it; there was no mens rea on the part of the defendant. Mens rea is defined as: "[A]s an element of criminal responsibility; a guilty mind; a guilty or wrongful purpose; a criminal intent." *Black's Law Dictionary* 6th Ed., p. 959. In this case there was no "guilty mind" or "wrongful purpose"—no mens rea whatsoever—as demonstrated by Ms. Brantley's openly recording the meeting by keeping her cell phone on the top of the table in plain view for all to see. It was not a surreptitious recording. The meeting was not of a private or confidential nature, but rather was related to business disciplinary matters. There were four people present for the meeting. The subject matter had been discussed with others prior to the meeting. The subject matter was discussed with others after the meeting. It was expected that a record of

what transpired at the meeting would be documented by multiple parties subsequent to the meeting. The meeting was not an "oral communication" protected under the act because manager-Burrows possessed no reasonable expectation of privacy under the circumstances.

"The focus and purpose of the [Wiretap Act] is the protection of privacy." *Commonwealth v. Spence*, 631 A.2d 666, 668 (Pa. Super. 1993). However, this expectation of privacy must be justifiable under the circumstances. *Commonwealth v. Prisk*, 13 A.3d 526, 531 (Pa. Super. 2011). In order to determine whether an individual's activities fall within the right of privacy, a court must engage in a two-pronged inquiry: (1) whether the defendant has exhibited a right of privacy; and (2) whether that expectation was such that society would recognize it as reasonable. *Id.*

The appellate courts have made it clear that a communication is not an "oral communication" as defined by the wiretapping act unless the victim has a reasonable expectation of privacy. "The definition of 'oral communications' requires consideration of the subjective and objective aspects of the speaker's expectation of privacy. The speaker's subjective expectation must be considered in light of all attendant circumstances (including his or her own intentions about the further disclosure of the contents of the intended communication) and any expectation must be one society is willing to recognize as legitimate. *Commonwealth v. Henlen*, 522 Pa. 514, 564 A.2d 905 (1989); *Commonwealth v. Parella*, 610 A.2d 1006 (Pa.Super. 1992). While the Superior Court has held that an expectation of non-interception

may exist even where an expectation of privacy does not, *Commonwealth v. McIvor*, 670 A.2d 697, 704 (Pa. Super. 1996), the Supreme Court later noted that the two expectations are coterminous. *Agnew v. Dupler*, 553 Pa. 33, 40, 717 A.2d 519,523 (1998). Where, for example, there is no contemporaneous interception of the e-mail communication and where it is turned over to the police by a third-party, no justifiable expectation of privacy will be found. *Commonwealth v. Proetto*, 771 A.2d 823 (Pa. Super. 2001)." Advisory committee note, Pa. SSJI (Crim) 15.5703.

The appellate courts in Pennsylvania have held in the case of *Gunderman v. Commonwealth of Pennsylvania Unemployment Compensation Board of Review*, 95 Pa.Cmwlth. 479, 484, 505 A.2d 1112, 1115 (Pa. Cmwlth.1986) that an employee's conduct in surreptitiously recording an unemployment compensation hearing did not violate the wiretapping act. The court held:

> Surreptitious recording of unemployment compensation hearing did not constitute interception of "oral communication" in violation of Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §5703, and, thus, did not constitute "willful misconduct" under 43 P.S. §802(e) that justified denial of unemployment compensation benefits, in that record of testimony given at hearing before referee was taken as matter of course for purposes of review by unemployment compensation board of review and the courts and, thus, precluded any legitimate expectation of privacy.

*Gunderman* at 1113. The court succinctly concluded:

> Here, the communication intercepted was testimony given at a hearing before the referee. As a record of such testimony is taken as a matter of course so that a record can be made for purposes of review by the Board and the courts, no legitimate expectation of privacy existed. Therefore, the act of recording the hearing did not violate the wiretapping act.

*Gunderman* at 1115.

The Pennsylvania Superior Court in *Agnew v. Dupler*, 553 Pa. 33, 717 A.2d 519 (1998), emphasized that a communication is not an "oral communication" as defined by the wiretap act unless the victim maintains a reasonable expectation of privacy. In *Agnew*, the chief of police sat in his car and recorded the conversations of the police officers in the squad room. One officer filed suit under the wiretapping act. On appeal, the Pennsylvania Supreme Court held that the officer did not possess an expectation of privacy. The court held that in order to establish a prima facie case under the wiretapping act for interception of an oral communication, the commonwealth must establish: (1) the complainant engaged in communication; (2) that the complainant possessed an expectation that the communication would not be intercepted; (3) that the complainant was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication. *Agnew*, 553 Pa. at 36, 717 A.2d at 522.

In the case sub judice, the communications intercepted

were the discussions at an employee-manager "coaching-session" meeting. Those present at the meeting included the manager, two employees, and a Union Steward, all employees of US Airways. (N.T. 12/21/11 pp.26-27). The meeting was not of a private or confidential nature but rather was related to business disciplinary matters. *Id.*

The Union Steward took notes as to the substance of the meeting. The manager, Ms. Burrows, and the Union Steward both kept a file as to what happened at the meeting. At the conclusion of the meeting, there was a "written coaching form" prepared by the manager that summarized the meeting which the employee could read and sign. This form became part of the employee's personnel file. Ms. Burrows testified that she understood that the contents of the meeting would be discussed by herself and her management team. Ms. Burrows also testified that she understood that the contents of the meeting would be discussed between Ms. Brantley and the Union, and other people. In addition, the two employees and the Union Steward were all recording the "coaching-session" meeting. Ms. Brantley was not the only person recording the meeting. (N.T. from the preliminary hearing 8/10/11 pp.13-16, 21; attached to the defendant's omnibus motion as exhibit D-1).

The alleged victim, Ms. Burrows, did not exhibit a right of privacy in a meeting where four people were present, at least two people took notes, and there was an expectation that after the meeting all of the parties would be discussing the contents of the meeting with others. Ms. Burrows summarized the meeting in her "written coaching

form" and offered the form to Ms. Brantley to review and sign. (N.T. from the preliminary hearing 8/10/11 pp.13-16, 21; attached to the defendant's omnibus motion as exhibit D-1).

Here, as in *Gunderman,* a record of the meeting was taken by the parties for purposes of review at a later time. The union representative took notes of the meeting. The manager kept a file about the meeting and prepared a "coaching form" about the meeting. The subject matter had been discussed with others prior to the meeting. The manager, Ms. Burrows, discussed the matter with her boss, Maryanne, prior to and after the meeting. (N.T. 8/10/11 pp.10-16). The parties understood that each person present at the meeting would be discussing the meeting with others. The meeting was documented by multiple parties subsequent to the meeting. The manager did not have a legitimate expectation of privacy in the meeting; to the contrary, the only evidence is that a record of the meeting was expected to be kept by multiple parties. (N.T. 8/10/11 p. 16). Ms. Burrows' expectation of privacy in the meeting was such that society would not recognize it as reasonable. Under the totality of circumstances, the alleged victim's expectation of privacy was not justifiable under the circumstances. Therefore, the act of recording the meeting did not violate the wiretapping act.

### *Miranda* Warnings

The Commonwealth asserts that Ms. Brantley was not in custody when the police interviewed her and thus the police were not required to provide *Miranda* warnings to

her. The Fifth Amendment right to counsel and the rights guaranteed by *Miranda* are only triggered when a person is undergoing actual custodial interrogation. *Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980). Pennsylvania courts have held that a person is deemed to be in custody for *Miranda* purposes when that person is physically denied of his or her freedom of action in any significant way or is placed in a situation in which he or she reasonably believes that his or her movement is restricted by the interrogation. *Commonwealth v. Gibson*, 553 Pa. 648, 662, 720 A.2d 473, 480 (1998), *Commonwealth v. Johnson*, 556 Pa. 216, 239, 727 A.2d 1089, 1100 (1999).

In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there was a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Commonwealth v. Busch*, 713 A.2d 97, 99 (Pa. Super. 1998) (citing *Stansbury v. California*, 511 U.S. 318, 322-323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam).

The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views of the law enforcement officer or the person being questioned. *Commonwealth v. Peters*, 434 Pa.Super. 268, 642 A.2d 1126, 1130 (1994), *Commonwealth v. Smith*, 732 A.2d 1226, 1234 (Pa.Super. 1999). The court must focus on the objective circumstances of the interrogation to determine "how a reasonable person in the position of the individual being questioned would gauge the breadth

of his or her freedom of action," *Stansbury v. California*, 511 U.S. 318, 325, 114 S.Ct. 1526, 128 L.Ed.2d 293.

In *Commonwealth v. McCarthy*, 820 A.2d 757 (Pa. Super. 2003), a police detective went to the defendant's place of employment, a school office, to investigate a series of thefts. The detective initially took writing samples from all of the employees at their workplace. Subsequently, he went back to interview the defendant without reading her *Miranda* rights. He was in plain clothes. He read her a police form 'notification of no arrest' during both interviews, and she signed it. The detective proceeded to inform the defendant that he suspected her involvement in the thefts, and he advised her that she should cooperate. Ultimately, she confessed to the thefts. At the conclusion of the meeting, the employee was free to leave. The Commonwealth argued that the defendant was not in custody, and therefore was not entitled to *Miranda* warnings. They asserted that the interrogation took place in her place of employment, not the police station, that she signed a waiver, and that she was never placed in handcuffs established that she was not in custody. In upholding the trial court's grant of suppression, the Superior Court found the facts of the situation entitled the defendant to *Miranda* warnings. A person is considered to be in custody for the purposes of *Miranda* when the officer's show of authority leads the person to believe that she was not free to decline the officer's request, or otherwise terminate the encounter. *McCarthy* at 760, citing *Commonwealth v. Witherspoon*, 756 A.2d 677 (Pa. Super. 2000).

The only difference between this case and

*Commonwealth v. McCarthy* is, here the officers never supplied the defendant with a notification of no arrest for her to sign. Here, the detective came to the defendant's place of employment to interview her. (N.T. 12/21/11 pp.24-25). He was in plain clothes. (N.T. 12/21/11 p.29). She was never placed in handcuffs. The officer never *Mirandized* the defendant. (N.T. 12/21/11 p.67). The officer proceeded to inform the defendant that he suspected that she recorded Ms. Burrows' conversation on her cellular telephone. (N.T. 12/21/11 p.31). The detective advised her that she could give the phone to him voluntarily or he would seize it and apply for a search warrant. (N.T. 12/21/11 p.32). The officer told the defendant if she interfered or resisted giving him the phone she would be arrested. (N.T. 12/21/11 p.46). The officer told the defendant, Ms. Brantley, that he (and the other officer present (N.T. 12/21/11 p.29)) had a right to take her cell phone and question her without a warrant. There would be consequences if she didn't comply. If she didn't voluntarily give him the phone, he would have seized it. During the interview the defendant advised the officer that she did not want to give her cell phone to him:

Q. Okay. At that point in time, she told you she didn't want to give you her cell phone, isn't that right?

A. Yeah. At some point during the interview she said what happens if I don't give you my cell phone, and I explained to her that I would seize her cell phone, I would take it from her, and I would apply for a search warrant to look inside of her cell phone to look for the recordings that I believed were there.

Q. All right. She told you that she couldn't be without her phone, is that right?

A. Yes.

Q. Okay. And she wanted to know how you could just take her phone from her, is that right?

A. Yes.

Q. Okay. And at this point in time you didn't have a warrant, is that right? A. That's right.

Q. Okay. But you told her that if she didn't give it to you, you would take it, is that right?

A. That's right.

Q. Okay. And she was hesitant to give you her cell phone, isn't that right?

A. She didn't want to be without her cell phone for an extended period time.

A. I didn't tell her if you don't give me your phone I'm going to arrest you. I said if you interfere with me physically taking that phone from you and you resist me as a police officer, you could be arrested for it and you would be arrested for it.

Q. Okay. Did you mean that when you said it?

A. Yes. She's going to physically resist me as a police officer seizing something from her and resist me and fight me, she would get arrested. Yes, I said that.

Q. Okay. So you have every intention to take her phone at that time, is that correct?

A. If she didn't want to voluntarily give it to me and I needed to apply for a search warrant, I needed to have that physical phone to apply for a search warrant. I explained to her that if she fighted me, if she resisted me in taking the phone, I would take it from her and she would be arrested if she fought with me.

Q. All right. So you did intend to take her phone if she didn't give it to you, is that right?

A. That's right. If she didn't voluntarily give me the phone, I would have taken it from her.

(N.T. 12/21/11 pp.44-47). (emphasis added).

The defendant was placed in a situation in which she reasonably would have believed that her movement was restricted:

Q. Trooper, so if she attempted to walk away without giving you the phone you would've let her do that?

A. No. I would have taken the phone from her. I would have seized the phone.

Q. Okay. And if she continued to walk away as you were trying to seize the phone, you would have arrested her?

A. Not necessarily. If she was to fight me or resist me from taking the phone and she committed an additional crime of fighting with me while I took her phone, I

would have arrested her for it.

(N.T. 12/21/11 pp.51-52).

Based upon all of the facts, the defendant was in custody at the time she turned over her cell phone during the interview at her workplace. She was placed in a situation in which she reasonably would have believed that her movement was restricted by the interrogation. When the officer told her to give him the phone or he'll take it, she was subject to custodial interrogation, and therefore he was required to provide her with *Miranda* warnings.

The defendant was in custody for the purposes of *Miranda* when officer Wysocki's show of authority lead her to believe that she was not free to decline the officer's request, or otherwise terminate the encounter. Ms. Brantley was in custody and entitled to the protection of *Miranda*.

## II. Consent

The appellant's second issue raised on appeal asserts that the defendant voluntarily consented to the search and seizure of her cell phone by the police.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protects individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Commonwealth v. Blair*, 575 A.2d 593, 596 (Pa. Super. 1990). Police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. One exception to the warrant requirement is consent voluntarily given. *Id.* at 597.

The central Fourth Amendment inquiry in consent cases consists of: (1) an initial assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, (2) ultimately, the voluntariness of that consent. *Commonwealth v. Strickler*, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000). Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus of the analysis. *Id.*

To establish a voluntary consensual search, the commonwealth must prove that consent is the product of an essentially free and unconstrained choice and not the result of duress or coercion, express or implied, or of an overborne will. This analysis is considered under the totality of the circumstances. *Strickler*, 757 A.2d at 901. Factors to be employed in determining whether consent to a warrantless search is voluntarily given are (1) the presence or absence of police excesses; (2) whether there was physical contact; (3) whether police directed the citizen's movements; (4) police demeanor and manner of expression; (5) the location of the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention, including its degree of coerciveness; (8) whether the person has been told that he is free to leave; and (9) whether the citizen has been informed that he is not required to consent to the search. *Commonwealth v. Kemp*, 961 A.2d 1247 (Pa. Super. 2008).

Considering the totality of circumstances, the court determined that Ms. Brantley did not provide a free and unconstrained consent to the officer to seize and search

her cell phone. Officer Wysocki directed Ms. Brantley's movements, his demeanor was demanding, threatening, and coercive. Officer Wysocki never advised her of the right to refuse the search of her phone. To the contrary he advised the Defendant:

Q. Okay. And she wanted to know how you could just take her phone from her, is that right?

A. Yes.

Q. Okay. And at this point in time you didn't have a warrant, is that right?

A. That's right.

Q. Okay. But you told her that if she didn't give you it [the cell phone] to you, you would take it, is that right?

A. That's right.

(N.T. 12/21/11 p.45).

Further, the officer threatened Ms. Brantley with arrest if she did not consent to the seizure of the phone:

Q. Okay. So you have every intention to take her phone at that time, is that correct?

A. If she didn't want to voluntarily give it to me and I needed to apply for a search warrant, I needed to have that physical phone to apply for a search warrant. I explained to her that if she fighted [sic] me, if she resisted me in taking the phone, I would take it from

her and she would be arrested if she fought with me.

Q. All right. So you did intend to take her phone if she didn't give it to you, is that right?

A. *That's right. If she didn't voluntarily give me the phone, I would've taken it from her.*

(N.T. 12/21/11 pp.46-47) (emphasis added).

Ms. Brantley was never told that she was free to leave nor was she informed that she was not required to consent to the search. To the contrary, she was told to hand over her phone or the officer would seize it. The officer's showing of authority in his statement that 'if she resisted him she would be arrested' would have "impact[ed] a reasonable citizen-subject's perspective" and tainted the consent given. *Strickler*, 757 A.2d at 902.

Based upon the totality of the circumstances and the factors enumerated by the Supreme Court in *Strickler*, the court finds that Ms. Brantley's "consent" was not voluntarily given for the search and seizure of her cell phone by the police. The officer's words "[I]f she didn't voluntarily give me the phone, I would've taken it from her." (N.T.12/21/11 p.47) were imbued with coercion preventing any voluntary consent.

## CONCLUSION:

For the foregoing reasons, the order granting the defendant's motion to suppress evidence should be affirmed on appeal.