J-S03020-20

2020 PA Super 77

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAWIAN HARPER | : | |
| | : | |
| Appellant | : | No. 711 WDA 2019 |

Appeal from the PCRA Order Entered April 29, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0009765-2016

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

CONCURRING/DISSENTING OPINION BY McLAUGHLIN, J.:

FILED MARCH 30, 2020

I agree with the learned Majority, that counsel was ineffective for failing to file a motion to suppress Dawian Harper's statements. However, I respectfully disagree with the Majority's conclusion that counsel was ineffective for failing to raise a corpus delicti objection and for failing to object to the testimony of Officer Patrick Moffatt that Harper's gunshot wound was self-inflicted.

Harper first contends counsel was ineffective for failing to file a motion to suppress. I agree with the Majority that such a motion would have had arguable merit. Although the questioning of an individual who is in the hospital does not necessarily equate with custodial interrogation, here, under the

_____

[*] Retired Senior Judge assigned to the Superior Court.

totality of the circumstances, I believe that the interaction between the police officers and Harper rose to the level of a custodial interrogation.

Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his or her] freedom of action in any significant way." Commonwealth v. Williams, 941 A.2d 14, 30 (Pa.Super. 2008) (en banc) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)). "Whether a person is in custody for Miranda purposes depends on whether the person is physically denied of [his] freedom of action in any significant way or is placed in a situation in which [he] reasonably believes that [his] freedom of action or movement is restricted by the interrogation." Id. at 30-31 (quoting Commonwealth v. Clayton Williams, 650 A.2d 420, 427 (Pa. 1994)). To determine whether a person is in custody, or the functional equivalent thereto, courts apply a totality of the circumstances analysis:

> Under the totality of the circumstances approach, the following factors are relevant to whether a detention has become so coercive as to constitute the functional equivalent of a formal arrest: "the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions."

Id. at 31 (quoting Commonwealth v. Levanduski, 907 A.2d 3, 24 (Pa.Super.2006) (en banc)). Further, interrogation occurs where "the police should know that their words or actions are reasonably likely to elicit an

incriminating response from the suspect." Id. at 30 (Commonwealth v. Ingram, 814 A.2d 264, 271 (Pa.Super. 2002)).

Here, Officer Moffatt testified that "[u]pon my arrival . . . I went in, and I told Mr. Harper that I was going to be performing a gunshot test on his hands to see if he had recently fired a gun." N.T., 2/8/17, at 14. After Harper initially stated he shot a gun two days prior, and after Officer Moffatt had performed the "test" on Harper's hands, Officer Moffatt "told [Harper] that [he] was going to examine his clothing to see the angle of the imperfection in the clothing, and if there was any residual gunshot residue on there – I told him if the story was correct from the fact he may have gunshot residue on his hand from two days prior it would not be consistent with also finding gunshot residue on his pants." Id. at 17.

That two uniformed officers questioned Harper while Harper was in the hospital does not, alone, constitute custodial interrogation. See, e.g., Commonwealth v. Fento, 526 A.2d 784, 789 (Pa.Super. 1987) (finding no custodial interrogation where police officers questioned defendant in hospital emergency room following accident). However, here, considering the totality of the circumstances I agree that a reasonable person in Harper's position would not have felt free to leave.

Officer Moffatt's questioning was not routine investigation. He testified that he began his questioning by informing Harper that he would perform a test, and he did in fact perform a fake test, without asking for consent. When Harper still claimed he did not shoot a gun that day, Officer Moffatt told Harper

he would perform a second fake test, again without asking for consent. Such actions negate the Commonwealth's argument that a reasonable person would have felt free to leave. Therefore, I agree that Harper was in custody at the time of the questioning. Compare Commonwealth v. Whitehead, 629 A.2d 142, 145 (Pa.Super. 1993) (affirming trial court's conclusion that a reasonable individual would think an interrogation was custodial where officer gathered information incriminating defendant at the scene, questioned defendant at hospital where defendant was fearful of not cooperating, and although the initial questions were general, the statements were made "after prompting and followed questions designed to obtain incriminating statements"), with Fento, 526 A.2d at 789 (no custodial interrogation where defendant was interviewed in hospital after an accident where the interrogation lasted approximately five minutes, was in the presence of hospital personnel, related to the investigation of the accident, and there was no apparent police trickery or deception).

I further would conclude that counsel also should have filed a motion to suppress inculpatory statements Harper made subsequent to receiving his Miranda rights. After Harper's initial inculpatory statements, Sergeant Brian Schmitt read Harper his Miranda rights, and Harper again made inculpatory statements. However, according to the testimony available, this occurred immediately after the initial statements, with no intervening circumstances or events. I would conclude that these statements were tainted by the unconstitionally-obtained statements. See Commonwealth v. Burno, 154

A.3d 764, 789 (Pa. 2017) (providing that factors courts should consider "when determining whether an original taint has been sufficiently purged, including: '(1) whether Miranda warnings were given; (2) the 'temporal proximity' of the illegal police conduct to the confession; (3) the presence of intervening circumstances or events; (4) the 'purpose and flagrancy of the official misconduct.'" (quoting Commonwealth v. Green, 581 A.2d 544, 550-51 (Pa. 1990)).

Therefore, I concur with the Majority that a motion to suppress the statements Harper made to the police would have had arguable merit. I further agree that counsel did not have a reasonable basis for not filing such a motion and that Harper suffered prejudice due to the lack of a motion.

Harper also contends that counsel was ineffective for failing to raise a corpus delicti objection. Because I do not believe such an argument would have had arguable merit, I respectfully disagree with the Majority's conclusion that counsel was ineffective for failing to raise a corpus delicti argument.

"The corpus delicti rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." Commonwealth v. Rivera, 828 A.2d 1094, 1103 (Pa.Super. 2003) (citation omitted). "The corpus delicti rule requires the Commonwealth to present evidence that: (1) a loss has occurred; and (2) the loss occurred as a result of a criminal agency." Commonwealth v. Taylor, 831 A.2d 587, 590 (Pa. 2003) (citing Commonwealth v. May, 301 A.2d 368, 369 (Pa. 1973)). Only after this two-

prong test is met "can 'the Commonwealth . . . rely upon statements and declarations of the accused' to prove that the accused was, in fact, the criminal agent responsible for the loss." Id. (quoting May, 301 A.2d at 369).

The burden placed on the Commonwealth to establish a loss was the result of a criminal agency is a preponderance of the evidence. Commonwealth v. Ahlborn, 657 A.2d 518, 521 (Pa.Super. 1995). "[T]he evidence must be more consistent with a crime than with an accident." Commonwealth v. McMullen, 681 A.2d 717, 722 (Pa. 1996). The criminal responsibility of the accused in particular is not a component of the rule. Id. (citing Commonwealth v. Ahlborn, 657 A.2d 518, 521 (Pa.Super. 1995)).

Unlike the Majority, I do not believe that the Commonwealth had to establish Harper's possession of the firearm absent his confession. Rather, to admit the statement regarding possession of a firearm, where no firearm was recovered, I believe the Commonwealth merely had to establish, at a preponderance level, that an incident involving a firearm resulted in a loss and that the loss was more likely the result of criminality than an accident.

Here, as the PCRA court noted, there was evidence of a loss, in that two people arrived at the hospital with gunshot wounds. Further, there was evidence that the loss was the result of criminality, as, among other evidence, a call reported shots fired, the police officers recovered ballistic evidence – including 12 shell casings – from the scene, and two people were admitted to the hospital for gunshot wounds. I believe that this evidence proves that a loss involving a firearm occurred and that the loss was more likely to be the

result of criminality than from an accident. I therefore would conclude that any objection based on corpus delicti would have lacked merit.

Harper also contends counsel was ineffective for failing to object to testimony from Officer Moffatt that "[i]t appeared to me through my experience to be a self-inflicted gunshot wound." N.T., 2/8/17, at 15. Officer Moffatt stated the "angle and location" made him think the wound was self-inflicted. Id. I disagree with the Majority's conclusion that counsel was ineffective for failing to object to this testimony.

Pennsylvania Rule of Evidence 701 governs lay opinion testimony and provides:

> Rule 701. Opinion Testimony by Lay Witnesses
>
> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.Evid. 701. "Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." Commonwealth v. Berry, 172 A.3d 1, 3-4 (Pa.Super. 2019).

In Commonwealth v. Kennedy, 151 A.3d 1117, 1122 (Pa.Super. 2016), we determined that lay opinion testimony regarding the trajectory of a bullet, which was determined by use of metal rods through bullet holes, was

rationally based on the witness's perception and permissible lay opinion testimony. Kennedy, 151 A.3d at 1124 . Similarly, in Berry, we concluded that an officer's lay opinion testimony that droplets at the crime scene appeared to be blood. Berry, 172 A.3d at 4.

Here, Detective Moffatt testified that, based on his experience and the placement of the entrance and exit wounds, he believed the wound was self-inflicted. As in Kennedy and Berry, this opinion testimony was admissible under Rule 701, as it was rationally based on his perception, helpful to understanding the testimony, and not based on scientific, technical, or other specialized knowledge. See Pa.R.Evid. 701. I would find the testimony was permissible lay opinion testimony. I would therefore conclude that any objection to the testimony would have lacked merit and counsel was not ineffective for failing to object to the testimony.

Accordingly, I concur with the Majority's conclusion that counsel was ineffective for failing to file a motion to suppress Harper's statements. However, I dissent from the Majority's conclusions that counsel also was ineffective for failing to raise a corpus delicti objection and failing to object to Officer Moffatt's lay opinion testimony that the gunshot was self-inflicted.