J-S03020-20

2020 PA Super 77

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
DAWIAN HARPER :
:
Appellant : No. 711 WDA 2019

Appeal from the PCRA Order Entered April 29, 2019
In the Court of Common Pleas of Allegheny County Criminal Division
at No(s): CP-02-CR-0009765-2016

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

OPINION BY McCAFFERY, J.:                    FILED MARCH 30, 2020

Dawian Harper (Appellant) appeals from the order entered in the
Allegheny County Court of Common Pleas, denying his timely petition for
relief under the Post Conviction Relief Act[1] (PCRA).  Appellant avers the
court erred in denying his claims that trial counsel was ineffective for: failing
to seek suppression of Appellant's inculpatory statements on both Miranda[2]
and corpus delicti grounds; and failing to object to a police officer's lay
testimony that Appellant's gunshot wound was self-inflicted.  After careful
review, we reverse the order and remand for a new trial.

Appellant was charged with persons not to possess firearms and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.§§ 9541-9546.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

firearms not to be carried without a license[3] after he made incriminating statements, on May 5, 2016, to City of Pittsburgh Police Officer Patrick Moffatt. We note that Appellant's attorney, Assistant Public Defender Lisa Caulfield (Trial Counsel),[4] did not seek to suppress the statements.

This matter proceeded to a non-jury trial on February 8, 2017. The Commonwealth presented the testimony of Officer Moffatt, which we review in detail as follows. Around 2:30 a.m. on May 5, 2016, Officer Moffatt and his partner, Detective Klaczak,[5] responded to a report of a shooting in the Hill District section of Pittsburgh. N.T. Trial, 2/8/17, at 10-11. When they arrived, there was no shooting in progress and no one present was involved in the shooting. Id. at 21. However, the police recovered three .40-caliber Smith & Wesson casings and nine 9-millimeter casings from the scene. Id. at 11.

Officer Moffatt was contacted by Sergeant Brian Schmitt, who was at the hospital, to go to the hospital to speak with Appellant. N.T. Trial at 13. We note Officer Moffatt was in uniform. N.T. Preliminary H'rg, 8/10/16, at 6. When Officer Moffatt arrived, Appellant was in a hospital bed and "had received some [medical] treatment." Id. at 14, 25. Officer Moffatt observed Appellant had a "gunshot wound" in his knee area. Id. at 14.

_____

[3] 18 Pa.C.S. §§ 6105(c)(7), 6106(a)(1).

[4] At the time of the 2017 trial, Trial Counsel was named Lisa Phillips, but by the time of 2019 PCRA hearing, she was known as Lisa Caulfield.

[5] Detective Klaczak's first name is not apparent from the record.

At trial, Officer Moffatt relayed that Sergeant Schmitt told him how Appellant was injured. N.T. Trial at 15. However, the trial court struck this testimony on hearsay grounds, and thereafter the Commonwealth asked Officer Moffatt what he observed. Id. The officer responded that he believed, based on his experience and his observation of "the angle and location" of the wound, that Appellant had "a self-inflicted gunshot wound." Id. at 15. Officer Moffatt further stated the wound was "[f]rom the top of the knee down towards the foot." Id. at 16. Trial Counsel failed to object to this testimony. See id.

Officer Moffatt further testified: "Upon my arrival . . . I told [Appellant] that I was going to be performing a gunshot test on his hands to see if he had recently fired a gun."[6] N.T. Trial at 14. Appellant initially stated he had never fired a gun. Id. at 16. Officer Moffatt did not, in fact, have a gunshot residue test kit, but instead performed a "fake test" by swabbing Appellant's hand with a Q-tip and saline. Id. at 19, 25-26. Appellant then stated he fired a handgun two days earlier at a gun range. Id. at 16. After Officer Moffatt performed the "test" on Appellant's hands, he told Appellant he would also test his pants for "any residual gunshot residue," and if his "story" about firing a gun two days earlier were true, "it would not be consistent with also finding gunshot residue on his pants." Id. at 17, 27. At

_____

[6] Detective Moffatt further confirmed he had told Appellant he would perform the test, rather than ask for permission to do so: "[W]hen I was preparing to perform the test, [Appellant] asked what I was doing. I told him it was a gunshot residue test[.]" N.T. Trial at 16.

that point, Appellant stated "he may have shot himself" when he was producing his gun because two men were shooting. Id.

At that time, Sergeant Schmitt, who was also present, advised Appellant of his Miranda rights. N.T. Trial at 17. Following the Miranda warnings, Appellant admitted to having a .40-caliber pistol on his person that night. Id. at 18. He stated he heard shooting and saw "two guys shooting," brandished his gun out of fear for his safety, fired more than once, and may have shot himself. Id. at 18, 27-28, 30. Appellant then told the officers he fled on foot and discarded his gun before getting a ride to the hospital. Id. at 30.

At trial, City of Pittsburgh Police Detective Michael Flynn also testified for the Commonwealth. He stated that on June 17, 2016, approximately a month and a half after the shooting, he and Detective Fallert[7] interviewed Appellant at the police station. N.T. Trial at 33, 35. The detectives "briefed" Appellant on what he had previously told Sergeant Schmitt, but Appellant stated Sergeant Schmitt was lying, denied having a gun on the night of the shooting, and stated that any positive gunshot residue test may have been due to his firing a gun at a firing range. Id. at 33-34.

No firearm was recovered. There was no evidence at trial that anyone observed the shooting or that Appellant was in possession of a handgun. The parties stipulated that Appellant had a prior conviction that rendered

---

[7] Detective Fallert's first name is not apparent from the record.

him ineligible to possess a firearm. Id. at 20. Appellant did not testify or present any evidence.

The trial court found Appellant guilty of both firearm possession offenses. On June 12, 2017, the court imposed a sentence of three to six years' imprisonment, to be followed by three years' probation. Appellant filed a post-sentence motion, which was denied. Appellant appealed to this Court, but discontinued the appeal on March 1, 2018. Commonwealth v. Harper, 1718 WDA 2017 (Notice of Discontinuance of Action) (Pa. Super. Mar. 1, 2018).

On July 31, 2018, Appellant filed the underlying PCRA petition, pro se. The PCRA court appointed present counsel to represent him. Counsel filed an amended PCRA petition, averring Trial Counsel was ineffective for: not seeking suppression of the statements Appellant made at the hospital, on both Miranda and corpus delicti grounds; and not objecting to Officer Moffatt's testimony that Appellant's gunshot wound was self-inflicted.

The PCRA court conducted a hearing on April 25, 2019. Officer Moffatt testified that his purpose for conducting the fake gunpowder "test" was to "see if [he] could get a reaction from [Appellant] about his saying that he hadn't shot a gun." N.T. PCRA H'rg, 4/25/19, at 10. Trial Counsel testified, without further explanation, that she never considered filing a suppression motion and she believed there was no basis for a corpus delicti challenge to the admission of Appellant's statement. Id. at 22. Trial Counsel also

testified she did not remember whether she considered objecting to Officer Moffatt's trial testimony that Appellant's wound was self-inflicted. Id.

The PCRA court denied Appellant's petition on April 29, 2019. Pertinently, the court found: (1) Appellant was not in custody when he made his initial statements to Officer Moffatt at the hospital, and thus any suppression motion based on Miranda would have been meritless; (2) Officer Moffatt properly testified as to his observation that Appellant's gunshot wound was self-inflicted; and (3) there would have been no merit to a corpus delicti objection, because the report to police of shots fired, recovery of ballistic evidence, and Appellant's gunshot wound together formed "substantial evidence" that a crime was committed. PCRA Ct. Op., 7/3/19, at 10-12, 14.

Appellant timely appealed and complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant presents three issues for our review:[8]

1. Was trial counsel ineffective in failing to file a motion to suppress inculpatory oral statements made by Appellant as he was questioned, without Miranda warnings, in his hospital bed after receiving treatment for a gunshot wound where police had formed the belief that Appellant's gunshot wound was self-inflicted and where the police officers engaged in a ruse designed to elicit an incriminating response?

2. Was trial counsel ineffective in failing to object to the admission of Appellant's inculpatory statements on the basis of the Corpus Delicti Rule where, absent Appellant's inculpatory statement, the corpus delicti for weapon possession offenses

---

[8] We have reordered Appellant's issues for ease of disposition.

could not be made and where the only evidence that Appellant's wound was a self-inflicted gunshot wound was the detective's conclusory, unqualified lay opinion testimony?

3. Was trial counsel ineffective in failing to object to the opinion testimony of a police detective that Appellant's wound was a self-inflicted gunshot wound where such opinion is within the realm of a medical/forensic expert and where the detective was not qualified to render such an opinion?

Appellant's Brief at 3.

We first note the relevant standard of review:

[O]ur scope of review "is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." . . . We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions de novo.

Commonwealth v. Becker, 192 A.3d 106, 112 (Pa. Super. 2018) (citation omitted), appeal denied, 200 A.3d 11 (Pa. 2019).

With respect to a claim of ineffective assistance of counsel,

[c]ounsel is presumed effective, and in order to overcome that presumption a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner.

The petitioner must plead and prove all three prongs, and the failure to establish any one prong warrants denial of an [ineffectiveness] claim.

Id. at 112-13 (citations omitted).

In his first issue, Appellant avers the PCRA court erroneously concluded he was not subjected to a custodial interrogation when he made

- 7 -

his initial statements, and thus further erred in denying his claim that Trial Counsel was ineffective for not seeking suppression of the statements. Appellant maintains: (1) he was in a hospital room; (2) he was questioned by two police officers in uniform[9] who had already formed the belief his wound was self-inflicted; (3) he was subjected to "a ruse clearly designed to pressure [him] into incriminating himself," Appellant's Brief at 10, 14, (4) the "custodial nature of the encounter was strengthened by" Officer Moffatt's directive — rather than a request — to perform a gunshot residue test, id. at 13-14; and (5) no reasonable person in his situation would feel he was free to leave or refuse the gunshot residue test. Finally, Appellant asserts there was no basis for, and he was prejudiced by, Trial Counsel's failure to seek suppression of his statements. We agree.

A petitioner claiming that counsel was ineffective for failing to move for suppression of evidence "must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." Commonwealth v. Arch, 654 A.2d 1141, 1143 (Pa. Super. 1995) (citation omitted). This Court has stated:

> If an individual is not advised of his Miranda rights prior to custodial interrogation by law enforcement officials, evidence obtained through the interrogation cannot be used against him.

---

[9] While the preliminary hearing transcript showed that Officer Moffatt was in uniform, N.T. Preliminary H'rg at 6, it is not apparent from the record whether Sergeant Schmitt was likewise in uniform. Nevertheless, the Commonwealth does not refute Appellant's claim that he was.

> "[I]n order to trigger the safeguards of Miranda, there must be both custody and interrogation.["] . . .
>
> In deeming an interaction to be a custodial interrogation, "the police officer's subjective intent does not govern the determination but rather the reasonable belief of the individual being interrogated."

Commonwealth v. Cruz, 71 A.3d 998, 1003 (Pa. Super. 2013) (citations omitted).

> The standard is an objective one, with due consideration given to the reasonable impression conveyed to the person being interrogated. A person is considered to be in custody for the purposes of Miranda when the officer's show of authority leads the person to believe that [he] was not free to decline the officer's request, or otherwise terminate the encounter.

Commonwealth v. McCarthy, 820 A.2d 757, 760 (Pa. Super. 2003) (citations omitted).

> The court must consider the totality of circumstances, including factors such as "the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions."

Cruz, 71 A.3d at 1004 (citation omitted).

Appellant relies on this Court's 1993 decision in Commonwealth v. Whitehead, 629 A.2d 142 (Pa. Super. 1993), in which we stated:

> [T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses

primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.

Id. at 145 (citation omitted).

Appellant also relies on our Supreme Court's 1972 decision in Commonwealth v. D'Nicuola, 292 A.2d 333 (Pa. 1972). In that case, the defendant was found in his car following a drug overdose. Id. at 334. The police also found, in the car, a revolver that was recently fired. Id. The following day, the defendant was questioned by police at the hospital. Id. "Allegedly, the interview was conducted as a routine follow-up to the [defendant's] apparent suicide attempt," but at that time, the police knew the murder victim — an associate of the defendant — was missing. Id. at 334-35. The police showed the defendant the revolver and asked whether it was his and if so, where he obtained it. Id. at 335. Upon further questioning, the defendant made incriminating statements concerning the victim. Id. Subsequently, the defendant sought to suppress the incriminating statements, arguing that Miranda warnings were required under the circumstances, but not given. Id. The trial court denied the suppression motion, and a jury found the defendant guilty of first-degree murder. Id.

On appeal, our Supreme Court reversed, holding the police's

questioning amounted to a custodial interrogation under Miranda:

> Although at the time of the hospital interview the police were unaware of [the victim's] death, they definitely knew [the victim] was missing and that he and [the defendant] had not kept a previously scheduled appointment. Being aware of these circumstances and having found a recently fired revolver in [the defendant's] automobile, it is naive to assume that when the police came to the hospital to question the [defendant] they were merely following up on an attempted suicide. This point is further substantiated by the fact that the first specific questions asked by the police concerned the ownership of the weapon. If the police were merely investigating the attempted suicide, it would not have been necessary to produce the revolver which clearly was not involved in the attempt and question [the defendant] concerning its ownership. . . .

> *　　*　　*

> Here the police had definitely begun to focus on [the defendant's] criminal behavior. This is evidenced by the fact that they came to the hospital uninvited, initiated the general discussion, specifically inquired about the revolver and followed up on [the defendant's] statements about [the victim] with questions designed to elicit further information. It is highly probable that the police were not only focusing on him with respect to [the victim's] disappearance, but also investigating other crimes in which [the defendant] would have been a principal suspect[, f]or example, . . . a possible unauthorized use and possession of a dangerous drug[, or] a violation of the Uniform Firearms Act[.] In both situations, as well as in [the victim's] disappearance, a suspicion of criminality was attached to [the defendant's] behavior.

D'Nicuola, 292 A.2d at 335-36 (emphases added). The Supreme Court thus reversed the judgment of sentence and granted a new trial. Id. at 337.

In finding Appellant was not subjected to any custodial interrogation, the PCRA court reasoned Officer Moffatt "was not questioning [Appellant,] but rather, he was attempting to obtain information from a gunshot victim

- 11 -

as part of his investigation as to a shooting." PCRA Ct. Op. at 10. The court also emphasized Officer Moffatt's PCRA hearing testimony that at no time did he tell Appellant he was in custody, and that Appellant was free to leave at any time, even after the officer performed the gunshot residue "test." Id. at 5, 6. The court thus concluded that if Trial Counsel had filed a suppression motion, the motion would have been denied. Id.

Upon careful review, we conclude the PCRA court erred in finding Appellant was not subjected to a custodial interrogation necessitating Miranda warnings. First, the court did not address Appellant's arguments, under D'Nicuola and Whitehead, that Officer Moffatt's conduct was intended to elicit an incriminating response, rather than to impartially investigate Appellant's connection, if any, to the shooting. The court overlooks Officer Moffatt's belief — evidenced by his testimony that Appellant suffered a self-inflicted gunshot wound — at the start of questioning that Appellant somehow participated in the shooting. Thus, like the police in D'Nicuola, Officer Moffatt initiated the interview to confirm his suspicion that Appellant engaged in criminal behavior. See D'Nicuola, 292 A.2d at 335-36. Furthermore, the entire line of questioning was a ruse to elicit an incriminating response. At no point did Officer Moffatt ask Appellant whether he observed any shooting, how he was injured, or whether he was a victim. Instead, the officer began the meeting by commanding — and not, as Appellant points out, requesting — him to submit to a gunshot powder

residue test, ostensibly to determine whether Appellant fired a gun. When Appellant denied firing a gun, Officer Moffatt responded he would further test Appellant's pants in order to verify Appellant's "story". N.T. Trial at 17. Officer Moffatt knew these directives were "reasonably likely to evoke an incriminating response." See Whitehead, 629 A.2d at 145. In fact, those directives were designed to elicit an incriminating response. Any contention to the contrary is not supported by the record. Indeed, Officer Moffatt plainly acknowledged at the PCRA hearing that he performed a fake gunshot powder residue "test" "to see if [he] could get a reaction from [Appellant] about his saying that he hadn't shot a gun," and "to get [Appellant] to possibly incriminate himself." N.T. PCRA H'rg at 10.

Next, the PCRA court did not consider whether Appellant believed — nor whether a reasonable person in his situation would have believed — he was free to leave. Instead, the court solely relied upon Officer Moffatt's opinion that Appellant was free to leave. See Cruz, 71 A.3d at 1003-04; McCarthy, 820 A.2d at 760; PCRA Ct. Op. at 5. We agree with Appellant that a reasonable person in this situation would feel neither free to leave or to refuse the gunshot residue test. See McCarthy, 820 A.2d at 760. We find pertinent Justice Wecht's recent discussion, in a concurring opinion in Commonwealth v. Cost, 39 EAP 2018, ___ A.3d ___ (Pa. Sept. 11, 2019) (Wecht, J., concurring), of the practical application of our search and seizure jurisprudence:

[I]n identifying as "reasonable" a belief that few if any people actually hold, the governing standard protects police from the strictures that would apply were courts to embody the reality of citizen-police interactions in constitutional doctrine. This may be desirable as a practical matter, but we must proceed with a caution informed by lived experience if we are to honor the Fourth Amendment's protections in the breach; constitutional protections cannot yield to convenient fictions. A reasonable-person test that seeks to balance real world experience with the practical need to "allocat[e] very modest weight to the possibility for psychological coercion arising from a fairly wide range of police conduct," [Commonwealth v. Au, 42 A.3d 1002, 1008 (Pa. 2012),] is not unwarranted, undesirable, or unattainable.

Cost, 39 EAP 2018 at 4, ___ A.3d at ___ (Wecht, J., concurring).

For the foregoing reasons, we conclude that under the particular facts presented in this matter, Appellant established his underlying claim had arguable merit — that, where Miranda warnings were not initially given, a motion to suppress his statements would have been meritorious. See Becker, 192 A.3d at 112-13; Arch, 654 A.2d at 1143. We further agree Trial Counsel's failure to seek suppression of Appellant's statements lacked a reasonable basis; at the PCRA hearing, she testified she never considered filing a suppression motion, but offered no reason why. N.T. PCRA H'rg at 22. See Becker, 192 A.3d at 112-13; Arch, 654 A.2d at 1143. Finally, we agree with Appellant that he was prejudiced by Trial Counsel's inaction, where the only evidence that he committed the offenses charged — gun possession — was Officer Moffatt's trial testimony that Appellant admitted to possessing a gun on the night in question. See N.T. Trial at 17. In support, we reiterate there was no eyewitness testimony about the shooting. No gun

was recovered, and there was no evidence linking Appellant to the 12 casings found at the scene. Moreover, there was no testimony from any witness that Appellant possessed a firearm. Furthermore, in his subsequent June 17, 2016 statement to police, Appellant denied ever shooting a gun. Therefore, we reverse the PCRA court's denial of relief on this issue, and remand for a new trial.

In Appellant's second issue, he avers the PCRA court erred in denying his claim that Trial Counsel was ineffective for not making a corpus delicti challenge to the admission of the statement made to Officer Moffatt.[10] Appellant maintains there was no "clear evidence" of any illegal gun possession independent of his inculpatory statement. Appellant's Brief at 24. We agree.

We note:

> The corpus delicti rule involves the admissibility of evidence, which we review for an abuse of discretion. "The corpus [delicti] . . . rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." "The Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the corpus delicti of a crime, but the evidence must be more consistent with a crime than with [an] accident." The corpus delicti, or "body of the crime," may be proven by circumstantial evidence.

Our Court has explained:

_____

[10] The corpus delicti "rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." Becker, 192 A.3d at 118.

> Establishing the corpus delicti in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the corpus delicti by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the corpus delicti beyond a reasonable doubt.

Commonwealth v. Murray, 174 A.3d 1147, 1153-54 (Pa. Super. 2017) (citations omitted).

Appellant was charged with only firearm possession offenses; thus, the Commonwealth's burden was to establish he possessed a firearm. See Murray, 174 A.3d at 1153. The PCRA court denied Appellant's claim as follows:

> In the instant case, there was substantial evidence that a crime was committed without the confession of [Appellant]. There was a call reporting shots were fired, ballistic evidence was recovered, and [Appellant], as well as another man, were admitted to the hospital for gunshot wounds. All that corpus delicti requires is that the Commonwealth have evidence that a crime occurred other than the confession, before introducing any statements made by [Appellant]. The purpose and policy of corpus delicti was not aggrieved by the outcome in this case.

PCRA Ct. Op. at 14.

We disagree with the PCRA court's conclusions. We emphasize that none of the evidence cited by the court, alone, supported a finding that Appellant himself possessed a gun. There was no evidence anyone observed Appellant possessing a gun, no evidence linked him to the casings found at

- 16 -

the scene, and no gun was recovered. Moreover, there was not a scintilla of evidence connecting Appellant to the scene of the underlying shooting, the casings found, or the particular shooting itself. A gunshot wound alone cannot substitute for evidence of an illegal shooting. There was simply no nexus established connecting Appellant to the "evidence" cited by the PCRA court and the body of the crime. Instead, the only evidence of gun possession was, as discussed above, Officer Moffatt's testimony that Appellant admitted to carrying a gun on the night in question. Accordingly, there was arguable merit to Appellant's underlying claim—that the Commonwealth did not establish the corpus delicti beyond a reasonable doubt, and thus evidence of Appellant's statement should been precluded. See Becker, 192 A.3d at 102; Murray, 174 A.3d at 1153.

Furthermore, Appellant established there was no reasonable basis for Trial Counsel's failure to make a corpus delicti challenge. At the PCRA hearing, Trial Counsel testified she "didn't believe there was a basis for" a corpus delicti claim, but provided no explanation for her conclusion. See Becker, 192 A.3d at 102; N.T. PCRA H'rg at 22. Additionally, for the same reasons discussed in his Miranda-based claim, Appellant has shown he was prejudiced by the admission of Officer Moffatt's testimony; but for this testimony, there was no evidence Appellant possessed a firearm. See Becker, 192 A.3d at 102

In Appellant's final issue, he avers the PCRA court erred in finding Trial

Counsel not ineffective for failing to object to Officer Moffatt's testimony that Appellant's gunshot wound was self-inflicted. Appellant reasons that Officer Moffatt could have testified, as a lay witness, about his observation that Appellant had a wound in his knee. However, Appellant claims, an opinion that Appellant sustained a self-inflicted gunshot wound would encompass not only a medical diagnosis, but also forensic science. Appellant emphasizes no foundation was laid for this testimony and Officer Moffatt was not qualified as an expert. He further avers he was prejudiced by Trial Counsel's failure to object, where the only evidence implicating him in possessing a firearm was Officer Moffatt's testimony that Appellant admitted to possessing one, and that Officer Moffatt believed Appellant's wound was self-inflicted. Finally, Appellant asserts there was no apparent basis for Trial Counsel's failure to object.

Although we remand for a new trial based on Appellant's Miranda-related claim, we address this issue because it may arise at a new trial. We note:

> "The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion."

> Pursuant Pennsylvania Rule of Evidence 701, Opinion Testimony by Lay Witness, lay witness testimony in the form of an opinion is limited to one that is:

> (a) rationally based on the witness's perception

> (b) helpful to clearly understanding the witness's testimony

or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[11]

Pa.R.E. 701 (emphasis added). Our cases further hold that lay witnesses may testify to someone's readily observable physical condition or appearance that does not require medical training.

Commonwealth v. Gause, 164 A.3d at 532, 537-38 (Pa. Super. 2017) (en banc) (some citations omitted and paragraph break added).

"Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." Commonwealth v. Berry, 172 A.3d 1, 3-4 (Pa. Super. 2017). Lay testimony has been defined as testimony "intended to describe something that jurors otherwise had not been able to experience for themselves, by drawing upon the sensory and experiential observations that the witness made firsthand." Commonwealth v. Rose, 172 A.3d 1121, 1131 (Pa. Super. 2017).

In denying relief on Appellant's claim, the PCRA court found Officer Moffat's testimony was properly admitted as lay testimony; it reasoned, in sum:

In the instant case, [Officer] Moffatt was not testifying as an expert on gunshot wounds, he was merely stating what he observed while at the hospital. This testimony was rationally based on [Officer] Moffatt's perception and it aided the fact finder in understanding why [he] interviewed [Appellant] in the

---

[11] Rule 702 addresses testimony by expert witnesses. Pa.R.E. 702. It is undisputed that in this case, Officer Moffatt was not offered or qualified as an expert witness.

manner in which he did. This clearly falls under [Pa.R.E. 701(a) and (b)], making [Officer] Moffatt's opinion testimony permissible under the Pennsylvania Rules of Evidence.

PCRA Ct. Op. at 12.

After careful review, we agree with Appellant that the pertinent portion of Officer Moffatt's testimony was beyond the scope of lay testimony permitted by Rule of Evidence 701(c). An opinion that a gunshot wound was self-inflicted would require specialized expert medical and forensic training. See Pa.R.E. 702(c). Aside from a vague reference to his "experience" and "the angle and location" of Appellant's wound, as well as his uncorroborated opinion that the wound was "[f]rom the top of the knee down towards the foot," Officer Moffatt offered no medical or forensic observations of the wound, nor any medical or forensic theories supporting his opinion. See N.T. Trial at 15. Indeed, the officer did not even explain whether Appellant's wound was bandaged or undressed. See id. at 14 ("[Appellant] had [already] received some treatment."). Thus, Appellant's underlying claim had arguable merit.

Furthermore, Appellant established Trial Counsel had no rational basis for not objecting to the testimony at trial. At the PCRA hearing, Trial Counsel simply testified she did not remember whether she considered objecting to Officer Moffatt's testimony; she did not offer any explanation why she failed to object. N.T. PCRA H'rg at 22.

Finally, the failure to object was prejudicial to Appellant, where, as

stated above, the only evidence of Appellant's possession of a gun was Officer Moffatt's testimony that Appellant stated he had a gun that night and may have shot himself. Accordingly, we reverse the portion of the order denying relief on this issue and remand for a new trial.

In sum, we conclude the trial court erred in finding Trial Counsel not ineffective for failing to seek suppression, under Miranda and our corpus delicti rule, of Appellant's inculpatory statement and for not objecting to Officer Moffatt's lay testimony that Appellant's gunshot wound was self-inflicted. Accordingly, we reverse the order of the PCRA court denying Appellant's PCRA petition and remand for a new trial, consistent with this opinion.

Order reversed. Case remanded for new trial. Jurisdiction relinquished.

Judge Pellegrini joins this opinion.

Judge McLaughlin files a concurring and dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2020

- 21 -