401 A.2d 779

**COMMONWEALTH of Pennsylvania**

v.

**Craig GLOVER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided April 12, 1979.

Alan Rosenberg, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, SPAETH and LIPEZ, JJ.

CERCONE, President Judge:

This appeal arises from appellant's conviction for rape, robbery, two counts of aggravated assault, and criminal

conspiracy and the judgments of sentence thereon. Appellant raises numerous allegations of error which we shall treat seriatim. The relevant facts are as follows:

At approximately 1:30 A.M. on September 30, 1976, Delores Cahee was concluding an evening at a bar on the corner of 60th Street and Lansdowne Avenue in West Philadelphia when she enlisted the services of Charles Cromartie in securing her a ride home. Cromartie approached a white Cadillac of mid-sixties vintage and asked the driver if he would mind driving Mrs. Cahee home. Although Cromartie did not know any of the four occupants of the car by name, he did recognize the men as being persons whom he had seen about the neighborhood. The driver consented to drive Mrs. Cahee home, and with Cromartie in the back seat and Mrs. Cahee in the front of the two-door car, the sixsome embarked on a trip which concluded for Mrs. Cahee and Cromartie in Fairmount Park.

It soon became apparent to Mrs. Cahee, when appropriate turns were not taken, that her home was not the driver's destination. Her attempt to leap from the car was frustrated by the man sitting next to her, whom Cromartie subsequently identified as appellant. Once in Fairmount Park, the driver brought the vehicle to a halt. Outside the car when he inquired about stopping, Cromartie was beaten, slashed several times by a sharp instrument (either a razor or a knife), and robbed. Cromartie identified appellant as the man who actually removed his wallet. Although she was not cut, Mrs. Cahee was forced to have intercourse with three of the four men who cooperated by holding her arms and legs. With Cromartie and Cahee vanquished, the four men sped off in the Cadillac, apparently hastened by the advent of a police wagon. Cromartie, bleeding profusely, summoned the police and both he and Mrs. Cahee were taken to the hospital for treatment.

Later that morning Cromartie selected appellant's photograph from an array of six and identified him as being one of his assailants. The police then proceeded to appellant's home, 6020 Masters Street in West Philadelphia, for the

purpose of arresting him. When they arrived at the Masters Street address they observed a white Cadillac fitting the description of the suspected vehicle parked across the street from appellant's home. Examining the automobile, which had a white interior, Officer Riehl of the Philadelphia Police observed large bloodstains on the passenger's side in the front seat. Although Cromartie's recitation of the events of the preceding evening did not account for the stains, it turned out that appellant, who had been riding in the front seat, had appeared at Lankenau Hospital, not far from the scene of the crime, at 3:30 that morning. He had been treated for a deep slash across his forearm and released. The automobile was impounded and photographed, and Cromartie positively identified the photographed vehicle as being the one which transported him to Fairmount Park that fateful evening. There were some inconsistencies in the testimony of Cromartie and Mrs. Cahee, but they were not material. Additionally, it would have been useful had Mrs. Cahee been able to identify appellant, but the evidence recited above and its permissible inferences, were clearly sufficient to find appellant guilty of the offenses charged beyond a reasonable doubt.[1]

Appellant's first argument, that Cromartie's in-court identification of appellant was tainted by an illegal photographic identification before trial, need not detain us for it is not supported by the record. Both Cromartie and the police officer who displayed the photographs testified at the suppression hearing that Cromartie was shown photographs of six different black men simultaneously from which he selected appellant's photograph. Appellant's contention, that Cromartie's testimony indicates he was shown one photograph at a time on six different occasions, arises from a strained reading of questions asked of Cromartie on cross-examination. On appropriate evidence the suppression court found this fact contrary to appellant's contention. Since the photos shown to Cromartie were available for appellant's

1. See *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Esposito*, 236 Pa.Super. 127, 344 A.2d 655 (1975).

use, the procedure the Commonwealth employed complied with the standards enunciated in *Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799 (1974). There being no illegality in connection with the photographic identification, there was no error in permitting Cromartie to identify appellant at trial. *Commonwealth v. Holz*, 245 Pa.Super. 376, 369 A.2d 452 (1976).

Appellant next asserts that his right to a fair trial was violated by numerous instances of prosecutorial misconduct. We find that appellant's right to a fair trial was not so impaired by any misconduct by the prosecutor.[2] For example, during the questioning of Cromartie on redirect examination by the assistant district attorney, the following transpired:

Q.: "Do you know that I'm an Assistant District Attorney?"

A.: "I don't. This is my first time. I don't know too much."[3]

Q.: "This is the first time that you practically got killed, is that right?"[4]

Defense counsel immediately objected and moved for a mistrial. Obviously, the question was improper, and the trial judge sustained the objection but denied the motion for a mistrial. Instead, the judge gave appropriate cautionary

2. In some instances the errors appellant now alleges were not preserved for appeal by contemporaneous and appropriate objection. See *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

3. The assistant district attorney engaged this line of questioning because, on cross-examination, Cromartie had manifested confusion about having discussed his testimony with the district attorney's office prior to trial. The assistant district attorney apparently was trying to elicit a response which would explain this confusion.

4. It should be noted that the seriousness of Cromartie's wounds and the attendant bleeding supported an inference that the wounds could have been fatal without prompt medical attention. In addition, the wounds helped to rebut any inference that Cromartie was an accomplice to the assault on Mrs. Cahee; an inference defense counsel sought to raise because Cromartie was wearing no trousers when the police arrived at the scene. Cromartie explained that the trousers were slashed from him during the robbery.

remarks to the jury instructing the jury to disregard the assistant district attorney's question and reminding them that the facts must be found on the basis of the testimony of the witnesses, not on the statements of counsel. Under the circumstances such an instruction was adequate to cure the error. *Commonwealth v. Martinolich*, 456 Pa. 136, 148–50, 318 A.2d 680 (1974), *cert. denied*, 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974). See also *Commonwealth v. Fultz*, 478 Pa. 207, 386 A.2d 513 (1978). Appellant also contends that the assistant district attorney's repeated use of terms like "slasher" and "vicious assault" in his closing were inflammatory. We find, however, that they did not range beyond the latitude that the prosecutor is permitted in his summation to the jury. See *Commonwealth v. Haynes*, 245 Pa.Super. 17, 25, 369 A.2d 271 (1976). Although, in one case the assistant district attorney erroneously referred to appellant as the slasher, he immediately corrected himself and admitted to the jury that he had misspoken. In sum, these remarks are simply not of the type which the courts of this Commonwealth have determined to mandate a mistrial. See *Commonwealth v. Stolzfus*, 462 Pa. 43, 60–62, 337 A.2d 873 (1975).

▪ Appellant next contends that the court erred in permitting the police officer who discovered the Cadillac across the street from appellant's home to testify that the stains on the front seat appeared to be blood; and, that the court further erred in requiring appellant to display the scar on his arm from the wound he received on the night in question, as well as permitting Cromartie to display his scars from the slashing. The argument concerning the police officer's testimony, which was corroborated by two black and white photographs of the interior of the car, is frivolous. A lay witness may testify that a certain substance appeared to be blood without having to subject the substance to chemical analysis. *Commonwealth v. Schroth*, 479 Pa. 485, 388 A.2d 1034 (1978); 3 Wharton's Criminal Evidence § 612 (13th ed. 1957). The evidence was relevant to support the inference that appellant was accidentally cut during the

beating and robbery of Cromartie, and had been bleeding in the automobile before he admitted himself to Lankenau Hospital. Insofar as the displays of the fully healed scars to the jury are concerned, they were also relevant to the criminal events in question and not likely to provoke the passions or prejudices of the jury. McCormick on Evidence § 215 (2d ed. 1972); 3 Wharton's Criminal Evidence § 625 (13th ed. 1957). Compare *Commonwealth v. Garrison*, 459 Pa. 664, 331 A.2d 186 (1975); *Commonwealth v. Powell*, 428 Pa. 275, 241 A.2d 119 (1968) (gruesome color slides of murder victims).

██ Next, appellant's claim that the court erred in denying a request for a continuance immediately before trial has no merit. The request was based upon counsel's desire to reread and reflect further upon the notes of testimony taken during the suppression hearing. In the first place, counsel's request for a continuance did not comply with Pa.R.Crim.P., Rule 301(b) which requires that requests for continuances be made more than 48 hours before trial, unless extenuating circumstances exist. Secondly, counsel thoroughly cross-examined Commonwealth witnesses based upon their previous testimony, and used the notes of testimony to impeach their credibility. Hence, appellant was not prejudiced by the denial of a continuance. See *Commonwealth v. Kishbach*, 247 Pa.Super. 557, 373 A.2d 118 (1976).

██ Lastly, appellant contends that his defense was damaged when the court refused to call a city detective who investigated these crimes as a court witness. Appellant was not harmed, however, because the information he sought to evoke from the detective, concerning prior inconsistent statements by Cromartie, he did in fact evoke when he called the detective, his only witness, and questioned him as by cross-examination.[5]

For the foregoing reasons, the judgments of sentence are affirmed.

5. Appellant's remaining contention, that voir dire of prospective jurors was improperly restricted, was not preserved for review by timely objection and by being raised in post-verdict motions. This argument, therefore, has been waived.