J-S55011-17

2017 PA Super 282

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     :        PENNSYLVANIA
                                     :
            v.                       :
                                     :
                                     :
KEITH LAMONT BERRY,            :
                                     :
         Appellant             :     No. 193 MDA 2017

Appeal from the Judgment of Sentence December 19, 2016
In the Court of Common Pleas of Northumberland County
Criminal Division at No(s):  CP-49-CR-0000595-2015

BEFORE: DUBOW, J., RANSOM, J., and STRASSBURGER, J.[*]

OPINION BY DUBOW, J.:                   **FILED AUGUST 31, 2017**

Appellant, Keith Lamont Berry, appeals from the Judgment of

Sentence entered by the Northumberland County Court of Common Pleas

following his convictions after a jury trial of Robbery, Theft by Unlawful

Taking, Receiving Stolen Property, and two counts of Simple Assault.[1]  After

careful review, we affirm.

The underlying facts, as gleaned from the certified record, are as

follows.  On May 5, 2015, the victim, Mary McGinley, reported an assault to

police.  Mt. Carmel Borough Police Officer Matthew Dillman responded to the

reported assault at the home of the victim's aunt at 131 West Third Street in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701; 18 Pa.C.S. § 3921; 18 Pa.C.S. § 3925; and 18 Pa.C.S.
§ 2701, respectively.

Mount Carmel, Pennsylvania. Upon arriving at that location, Officer Dillman encountered the victim, who stated that Appellant had punched her in the face inside Appellant's residence at 24 East Second Street, also in Mount Carmel. The victim also reported that Appellant had taken her cell phone when she tried to call police for help. Officer Dillman observed fresh and dried blood on the victim's shirt and chest area, an open wound across the bridge of the victim's nose, a swollen bump on the side of the victim's forehead, and the victim's twisted nose. Officer Dillman called for an ambulance.

Approximately 30 minutes after responding to the home of the victim's aunt, Officer Dillman traveled to Appellant's residence. When he knocked on the door, there was no answer. Later that evening, Officer Dillman returned to Appellant's home with Corporal David Donkochik and several other officers. Appellant's wife, Anna Marie Soto, answered the door. When the officers explained that they were looking for Appellant, Soto claimed that she did not know Appellant's location. During their conversation with Soto, Corporal Donkochik and Officer Dillman observed droplets, which appeared to be blood, on the tile floor next to a mop and bucket eight feet inside the front door in the same location where the victim stated that Appellant had punched her in the face. The officers photographed the blood droplets and left Appellant's home.

Shortly thereafter, the officers learned of Appellant's whereabouts and responded to 50 North Maple Street in Mount Carmel. The officers entered

the apartment and discovered Appellant hiding in the bathroom with Soto. Appellant was crouching in the shower with the shower curtain closed. Police arrested Appellant and charged him with the above offenses.

On October 26, 2016, the day before trial, Appellant filed and litigated a Motion *in Limine* seeking to preclude "[a]ny reference, at any stage of the trial, to the substance being found on the floor of [Appellant's] apartment, as 'blood.'" Appellant's Motion *in Limine*, filed 10/26/16, at 1. The trial court denied Appellant's Motion *in Limine*. Appellant proceeded to a jury trial on October 27, 2016, at which the victim, Corporal Donkochik, Officer Dillman, and Emergency Medical Technician Michael Amarose testified. The trial court permitted Corporal Donkochik and Officer Dillman to testify about observing droplets of blood near a mop and bucket in Appellant's home during their conversation with Soto on the date of the incident. The jury convicted Appellant of each of the above charges.

On December 19, 2016, the trial court imposed a term of 9 to 22 months' incarceration.

Appellant filed a timely Notice of Appeal. Both Appellant and the trial court[2] complied with Pa.R.A.P. 1925.

Appellant presents one issue for our review:

---

[2] On April 3, 2017, the trial court filed a "Statement In Lieu of Formal Opinion."

> Whether the lower court abused its discretion in denial of Appellant's Motion *in Limine*?

Appellant's Brief at 5.

In his sole claim, Appellant avers that the trial court erred in admitting testimony from Corporal Donkochik and Officer Dillman stating that the substance they observed "was indeed blood, despite the absence of tests conducted on the substance." Appellant's Brief at 12. Although Appellant acknowledges that "a lay witness is competent to testify that a stain or stains appeared to him to be blood[,] Appellant avers that the testimony "was not stated as an opinion or on the belief the substance may be blood, but rather a definitive statement that the substance was in fact blood." *Id.* (acknowledging *Commonwealth v. Williams*, 410 A.2d 880, 885 (Pa. Super. 1979), which rejected a similar claim and held that lay witnesses may testify that a stain appeared to be blood).

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Tyson*, 119 A.3d 353, 357 (Pa. Super. 2015) (citation and quotation omitted). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013) (citations and internal quotations omitted).

Relevance is the threshold for admissibility of evidence. *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Pa.R.E. 401; *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002). "Evidence that is not relevant is not admissible." Pa.R.E. 402. In addition, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. *See also* Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 401.06 *et seq.*, § 403.06 *et seq.* (2017 ed. LexisNexis Matthew Bender).

Pennsylvania Rule of Evidence 701 addresses the admission of opinion testimony by lay witnesses and provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal

- 5 -

experiences that are helpful to the factfinder. ***See Commonwealth v. Davies***, 811 A.2d 600, 602 n.1 (Pa. Super. 2002) (citation omitted); ***see also*** Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 701.05 *et seq.* (2017 ed. LexisNexis Matthew Bender). Pursuant to Pennsylvania Rule of Evidence 104(a), the trial court exercises its discretion to determine whether such a lay opinion is helpful to the factfinder, which is the touchstone of its admissibility. ***See*** Pa.R.E. 104(a); ***Lewis v. Mellor***, 393 A.2d 941, 948-49 (Pa. Super. 1978) (*en banc*) (describing this procedure under the Federal Rules and adopting this approach in Pennsylvania).

"A lay witness may testify that a certain substance appeared to be blood without having to subject the substance to chemical analysis." ***Commonwealth v. Glover***, 401 A.2d 779, 782 (Pa. Super. 1979) (citation omitted). This Court has addressed the admission of testimony from a lay witness that a given substance appeared to be blood on several occasions. Pennsylvania courts have consistently permitted such testimony. ***See also Commonwealth v. Williams***, 410 A.2d 880, 887 (Pa. Super. 1979) (holding that "[a] lay witness is competent to testify that a stain or stains appeared to him to be blood[,]" and citing ***McLain v. Commonwealth***, 99 Pa. 86 (1881)); ***Commonwealth v. Schroth***, 388 A.2d 1034, 1038 (Pa. 1978) (reiterating the same general rule and concluding it was not error to show jury a crime scene diagram that indicated a "blood stain" given the

accompanying testimony by the person who created the diagram and the curative instructions).

As an initial matter, Appellant mischaracterizes the record in his argument. Appellant baldly asserts that the testimony "was not stated as an opinion or on the belief the substance may be blood, but rather a definitive statement that the substance was in fact blood." *Id.* at 12. Although Appellant refers to specific pages of the trial transcript in his brief argument, Appellant does not include any direct quotations of the objectionable testimony about which he complains on appeal. *See* Appellant's Brief at 10-12. Appellant's argument, which is based on the contents of the statements as well as the implications and inferences from the statements, has telling omissions, which is ultimately fatal to Appellant's argument on appeal.

Upon closer inspection, the certified record and the contents of the trial transcript do not support Appellant's various averments. Our review of the certified record and the trial transcript demonstrates that Corporal Donkochik and Officer Dillman consistently referred to the droplets in the context of their observations about how the droplets appeared to be blood. *See*, *e.g.*, N.T. Trial, 10/27/16, at 75 ("some of the droplets that I had spoke[n] to you about, which we made the determination appeared to be blood.").

Substantively, we agree with the trial court that the testimony from Corporal Donkochik and Officer Dillman was not outside the scope of Pa.R.E.

701.  *See* Trial Court Opinion, 4/3/17, at 1-3.  Corporal Donkochik and Officer Dillman gave permissible lay opinion testimony regarding their observations of the blood droplets while inside Appellant's home during their conversation with Soto.  The trial court's determination is consistent with the holding in *Glover*, *supra* at 782.

Additionally, Corporal Donkochik testified about his 24 years of experience as a police officer and his relevant crime scene training.  N.T. Trial, 10/27/16, at 75.  Notably, Officer Dillman testified that he directly observed the victim covered in blood, including blood on the victim's clothing, which did not elicit any objection from Appellant.  *See id.* at 92. Under Pennsylvania Rules of Evidence 701 and 702, this testimony from Officer Dillman, to which Appellant did not object, was substantively no different from the testimony about the droplets of blood on the tile floor.

The jury was well aware of Appellant's theory and its obligation to determine whether the droplets were blood, the victim's blood, or some other substance as part of its fact-finding duty.  The Commonwealth produced Officer Dillman's photographs of the blood droplets for the jury to independently review.  *See* Commonwealth's Exhibit C-8.  Appellant emphasized and referred to the substance as "alleged blood droplets" throughout trial.  N.T. Trial, 10/27/16, at 77, 94.  Appellant extensively cross-examined Corporal Donkochik and Officer Dillman on this issue, and both Corporal Donkochik and Officer Dillman testified that they did not test

the substance because they knew the identities of both the victim and Appellant and they did not need to connect Appellant to the crime scene given these particular circumstances.

Moreover, the trial court provided several relevant jury instructions at trial regarding the Commonwealth's burden, the jury's duty to determine the weight and credibility of the evidence presented, as well as the jury's responsibility to judge the "truthfulness and accuracy of each witness' testimony and decide whether to believe all or part or none of that testimony." *Id.* at 111, 118, 120-21. The trial court emphasized that the jury is the sole judge of the credibility of the witnesses using their common sense and "everyday practical knowledge of life" and should give the evidence and testimony "whatever credibility and weight you think it deserves." *Id.* at 121-22.

Our conclusion today is consistent with more than a century of Pennsylvania case law addressing objections to lay opinion testimony regarding untested substances that appear to the observer to be blood, as well as the considerable discretion afforded to trial courts. Whether or not the droplets were the victim's blood, or blood at all, were matters relating to the weight and credibility of that evidence properly reserved for the jury as fact-finder.

We discern no abuse of discretion or error of law in the trial court's determination that Corporal Donkochik and Officer Dillman testified as to

matters within their personal knowledge and experience with respect to the blood droplets. Thus, Appellant is entitled to no relief.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2017