J-A10007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TODD WHITE | : | |
| | : | |
| Appellant | : | No. 1628 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 2, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001497-2018

BEFORE: BOWES, J., SHOGAN, J., and PELLEGRINI, J.*

MEMORANDUM BY BOWES, J.: Filed: September 17, 2020

Todd White appeals from the judgment of sentence of two to four years of imprisonment imposed after he was convicted of robbery and related charges. We affirm.

The trial court summarized the factual history as follows:

On June 6, 2017, at approximately 11:10 AM, several police officers were dispatched by the Bucks County Police Radio for a report of a robbery occurring at the PNC Bank located at 301 W. Trenton Ave., Morrisville, PA 19067. In total, $2,944.00 in U.S. cash was taken from the bank. Of the money taken, two $50.00 bills were attached to a tracker device and five $50.00 bills were attached to bait money. Upon arrival at PNC Bank, Officers Nicholas Phillippe and Catherine Coffman interviewed Nyna Drula, the teller targeted by the robber.

During questioning, Drula described the robber as a black male, approximately six feet in height, with no facial markings. She described him as wearing a dark knit hat, glasses, a Michael Jordan brand jacket with a dark center and light colored sleeves

_____

* Retired Senior Judge assigned to the Superior Court.

and drawstrings, dark colored pants with a red pinstripe down the legs, dark sneakers with white soles. As the robber approached the teller counter, he proceeded to pull the full-facial ski mask (the black knit cap) over his face and calmly told Drula to give him all the cash, without displaying a note or weapon. Drula additionally noted that the robber wore Band-Aids on all of his fingers. Upon approaching the teller counter where Drula was stationed, Drula described the robber as stating that he wanted all the cash, no dye packs or anything like that, nobody would get hurt. After she complied with his demand, the robber ordered Drula to turn around while he exited the business, with which she also complied. Upon turning back around, Drula observed a black colored SUV leaving the area.

At this time, Drula triggered the bank's security system and also alerted Adedji Olusanya, another employee of PNC working at his station in the far corner of the bank. Olusanya observed out the window a black male in a black jacket walking along W. Trenton Ave. in the direction of Nolan Ave. Olusanya then alerted two more employees, Alycia Drake and Adriana Garrido, who were in the ATM vestibule at the time of the robbery.

Officers were able to track the location of the GPS tracker attached to the $50.00 bills. The tracker evidenced a path of movement which went from the PNC Bank through the parking lot of an Exxon gas station down W. Trenton Ave., and into a shrubbery-shrouded footpath that cuts through to the parking lot of Lincoln Arms Apartments at 609 Lincoln Ave. Following the footpath to its end, Officer Coffman discovered a green trash can from which she recovered a black knit hat with eye holes.

While Officers Phillippe and Coffman responded to PNC Bank, Officer Stephen C. Reeves responded to the area provided by the third-party GPS vendor which reflected the location of the GPS tracker to be 1356 Edgewood Ave., Trenton, NJ 08618. It was at this location that the GPS vendor indicated the locator came to rest and the tracker was likely disabled or destroyed around noon. Additional police units arrived at 1356 Edgewood Ave. and discovered a wallet and a pair of tear-away track pants located behind the apartment building. Officer Reeves noted that the track pants were black with a red stripe down the legs. Notably, the pants, discovered in the bushes, were dry despite the entire area being wet from rainfall that day. The wallet contained Appellant's New Jersey driver's license and an excess of $100.00.

While on the scene at 1356 Edgewood Ave., Officer Reeves was approached by Jolisa Marshall. Marshall stated that her neighbor, Nutty, had asked her via text message to borrow her vehicle that day. Marshall identified Appellant as Nutty and stated that she provided Appellant with her keys at 10:20 AM that day. Though her car had been returned, Appellant had not yet returned her keys. Marshall gave Officer Reeves permission to search her car, but no evidence was found inside the vehicle.

Laboratory testing later confirmed that Appellant's DNA matched that to the black knit cap recovered [from] nearby PNC Bank. DNA testing also confirmed that the black track pants were worn by Appellant. Although the DNA examiner identified several potential individual profiles on the knit cap and pants, the Appellant was identified as the major male contributor.

Neither the GPS tracker nor the money were ever recovered. The Michael Jordan brand sweatshirt was also not recovered.

On Thursday, June 8, 2017, Officer Coffman received a phone call from Appellant. Appellant told Officer Coffman that he was calling because he was told he was a suspect [in] a bank robbery. Appellant and Officer Coffman agreed to speak about the investigation and additionally agreed that Officer Coffman would travel to Appellant in New Jersey to have such a conversation.

On Thursday, June 15, 2017, Officer Coffman and Detective Greg Small visited Appellant at his home where they introduced themselves as police. Appellant greeted the officers and invited them into his living room where they waited while Appellant went to put on a shirt. Appellant "communicated freely," stated that he was currently "a little inebriated," and claimed that he had an alibi for the day of the robbery. Throughout the conversation, Appellant presented as friendly and cooperative, even voluntarily agreeing to submit to a DNA test.

On August 25, 2017, Officer Coffman and Detective Small returned to Appellant's home where they were again warmly received by Appellant, who agreed to a recording of the conversation. At this point, Appellant claimed he was on camera at his voting place (the Trenton Fire Station, 1464 W. State Street; the "Firehouse") at the time of the robbery. When shown a picture of the black knit cap, Appellant indicated that he has many of them

and he could not tell if the one in the photo was his or not. Appellant further confirmed via photo that the pants recovered by officers belonged to him, though they had gone missing from the drying line. Upon further investigation, the officers determined that there were no videos inside or outside the Firehouse where Appellant claimed to be on camera, voting.

Trial Court Opinion, 9/12/19, 1-4 (quotations and citations to the record omitted).

Appellant was arrested and charged with two counts of robbery and one count each of theft, receiving stolen property, terroristic threats, and recklessly endangering another person. Pre-trial, Appellant filed a notice of alibi and an omnibus pre-trial motion seeking to suppress the statements he gave on June 15, 2017 and August 25, 2017, and the testimony of Commonwealth witness Miren Conway. Appellant contended that Conway, his former cellmate, had gone through his discovery materials and was going to falsely testify that Appellant made admissions to him regarding the robbery.

On March 26, 2019, the trial court held a suppression hearing. At the conclusion of the hearing, the court denied the motion to suppress Appellant's statements. N.T. Pretrial Hearing, 3/26/19, at 46-47. However, the trial court did not rule on Appellant's motion to exclude Miren Conway's testimony. *Id*. at 12. Instead, the trial court deferred the issue, instructing trial counsel to present objections at trial during Conway's testimony and assuring him that the court would issue rulings. *Id*. at 11-12. Trial counsel agreed that he would make the appropriate objections during Conway's testimony. *Id*. at 9-12.

The same day, Appellant proceeded to a bench trial. At trial, Conway testified that Appellant "bragg[ed] how he robbed a bank," explained that he used concealer to hide his face tattoo, and put Band-Aids on his fingers so that he would not leave prints behind. N.T. Non-Jury Trial, 3/27/19, at 136-42. Despite the pre-trial discussion with the court, trial counsel did not lodge any contemporaneous objections regarding the admissibility of Conway's testimony. At the conclusion of the evidence, on March 28, 2019, the trial court convicted Appellant of robbery of a financial institution, theft by unlawful taking, and receiving stolen property. The court found Appellant not guilty at the remaining counts.

Appellant waived his right to a presentence investigation and proceeded directly to sentencing. N.T. Non-Jury Trial, 3/28/19, at 73. The court imposed a standard range sentence of two to five years of imprisonment for the robbery with no further penalty at the remaining charges. Appellant was ordered to pay $2,944 in restitution and deemed to be ineligible for a Recidivism Risk Reduction Incentive ("RRRI") sentence.

Appellant filed a post-sentence motion challenging the RRRI eligibility determination and asking the court to reconsider the discretionary aspects of his sentence. On May 2, 2019, the trial court held a hearing on Appellant's motion. At the conclusion of the hearing, the trial court denied Appellant's motion regarding RRRI eligibility, but granted his motion for reconsideration of his sentence. Accordingly, the court adjusted Appellant's sentence to two

to four years of incarceration, instead of the previously imposed two to five years of incarceration. All other conditions remained unchanged. N.T. Motion for Reconsideration, 5/2/19, at 8.

On May 31, 2019, Appellant filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court thereafter authored its Rule 1925(a) opinion.

Appellant presents the following issues for our review:

1. Did the trial court err in finding the evidence presented at the bench trial was sufficient to sustain a guilty verdict concerning the counts of 18 Pa.C.S. § 3701(a)(1)(vi) (robbery – demand money from financial institution); 18 Pa.C.S. § 3921(a) (theft by unlawful taking-movable property); and 18 Pa.C.S. § 3925(a) (receiving stolen property)?

2. Did the trial court err in considering the testimony of Miren Conway given the fact that he testified to what was in Appellant's discovery, which he had access to as Appellant's cellmate, had committed crimes of *crimen falsi*, and was motivated as he had an upcoming probation violation hearing?

3. Did the trial court err in letting the Commonwealth allude that there was concealer on the mask when the Commonwealth had ample opportunity to run forensic testing on the alleged concealer particularly after the Commonwealth interviewed Miren Conway and he alleged that Appellant stated he used concealer to cover his tattoos.

4. Did the trial court err in denying Appellant's motion for RRRI eligibility.

Appellant's brief at 5.

Appellant's first claim challenges the sufficiency of the evidence to support all three of his convictions. **_See_** Appellant's brief at 18-30. Our standard of review when considering a challenge to the sufficiency of the evidence is:

> [w]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**_Commonwealth v. Gause_**, 164 A.3d 532, 540-41 (Pa.Super. 2017) (citations and quotation marks omitted).

The Pennsylvania Crimes Code states that a defendant commits the crime of robbery of a financial institutions when, "in the course of committing a theft, takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof." 18 Pa.C.S. § 3701(a)(1)(vi). A defendant commits a theft by unlawful taking when he "unlawfully takes, or exercises

unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). Finally, a person is guilty of receiving stolen property if "he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a).

Appellant argues that the evidence was insufficient at all three charges because the Commonwealth failed to prove beyond a reasonable doubt that he was the actor. *See* Appellant's brief at 21-22. The trial court disagreed and explained its reasoning as follows:

> This [c]ourt properly found that the Commonwealth proved beyond a reasonable doubt that Appellant robbed a financial institution. PNC Bank is, self-evidently, a bank and thus a financial institution as contemplated by the statute. On the morning of June 6, 2017, Appellant woke up, borrowed his neighbor's car to drive to the PNC Bank located at 301 W. Trenton Ave., Morrisville, PA 19067, and, shrouded in a face mask, threatened the teller to hand over all the money with no dye pack or GPS, and "nobody would get hurt." This finding is supported by the evidence and testimony presented by the Commonwealth. The black knit cap (face mask) was recovered just a block down from the PNC Bank, along the foot path tracked by the GPS. The cap was tested and found to contain Appellant's DNA as the major male contributor.
>
> Police continued to follow the GPS tracker hidden in the stolen money straight to Appellant's front door. The Court also noted the reliability and accuracy of the GPS tracking devices used by banks. There the officers discovered the black track pants worn during the commission of the robbery, also containing Appellant's DNA as the major male contributor. Despite generally wet weather and the dampness of the surrounding area, detective testified that the black track pants were conspicuously dry. This [c]ourt did not find the Appellant's claim that the pants had been stolen to be credible.

Further, Appellant confided details of the robbery to his former cellmate, who testified at trial. These details included: borrowing his neighbor's car in the commission of the robbery, possibly using make-up to conceal his facial tattoo, and using Band-Aids to avoid leaving fingerprints or trace DNA evidence. Viewing the facts holistically, Appellant appears to have taken several steps to evade capture, including the use of the face mask, make-up, and Band-Aids, and the use of another's vehicle. In addition to the pants recovered behind the apartment building, Appellant's wallet containing his ID was also found behind the building where the GPS tracker had last been traced.

Next, sufficient evidence was presented to establish that Appellant is guilty of theft by unlawful taking. First, the Commonwealth established sufficient evidence that Appellant unlawfully took money, movable property, from PNC Bank. Based on the totality of the evidence, both physical and circumstantial, the Court concluded that Appellant was the individual who walked into PNC Bank on June 6, 2017, approached the teller, and threatened that no one would get hurt if she handed over the money. That money was property of PNC Bank and its lawful customers, and in no way belonged to Appellant. Appellant clearly intended to deprive PNC Bank permanently based on the steps he took to evade discovery, including attempting to conceal his face, disabling the tracking devices, and lying to police officers during their investigation. In addition to those steps, the money was never recovered, establishing the permanence of the theft.

This [c]ourt also found that Appellant was in receipt of stolen property as he did retain the money stolen from the bank and dispose of the GPS tracker in the money, knowing that it was stolen. Considering the money was still missing at the time of trial, there is no evidence that Appellant intended to restore it to the owner.

Trial Court Opinion, 9/11/19, at 9-11.

Our review of the certified record sustains the trial court's determination that the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant robbed the PNC bank. The trial court's well-

reasoned opinion properly describes how the evidence satisfied the elements of the three offenses. Accordingly, no relief is due.

Next, Appellant argues that the trial court erred in considering the testimony of Miren Conway, since Conway "was a biased witness, with crimen falsi conviction, whoneeded (*sic*) help in his sentencing, offered testimony against Appellant." Appellant's brief at 31. The Commonwealth responds that Appellant waived this claim when he failed to contemporaneously object on any of these grounds at trial. *See* Commonwealth's brief at 16. We agree.

It is well-established that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also Commonwealth v. Rodriguez*, 174 A.3d 1130 (Pa.Super. 2017). "The absence of a contemporaneous objection below constitutes a waiver" of the claim on appeal. *Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008). While Appellant did file a pre-trial motion on this topic, the trial court deferred the motion as premature and instructed Appellant to object contemporaneously. Appellant agreed that he would make the appropriate objections during Conway's testimony. When he neglected to lodge any objections to the admissibility of Conway's testimony at trial, he abandoned the challenge he raised in his pre-trial motion. Therefore, by failing to contemporaneously object, Appellant waived this issue on appeal.

Appellant's third contention is that the trial court erred when it allowed Officer Coffman to classify the unidentified substance on the knit cap as

makeup concealer. *See* Appellant's brief at 35-37; *see also* N.T. Non-Jury Trial, 3/27/19, at 173. Our standard of review for evidentiary rulings made by the trial court is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015).

By way of background, Conway testified that Appellant told him that he used makeup concealer to cover a large facial tattoo. *See* N.T. Non-Jury Trial, 3/27/19, at 137-38. Afterwards, Officer Coffman opined that, based on her personal experience with wearing makeup, she believed that the substance found on the knit cap was makeup concealer. *Id*. at 173. Trial counsel objected on speculation grounds. *Id*. However, the trial court overruled the objection, explaining:

> I see the materials that she's speaking about. And while she is not an expert - - an expert is a person who has information not generally available to persons who are not educated in that area – I'll accept and receive her testimony, and I'll give it the weight that I think is appropriate in light of her knowledge of the field.

*Id*.

Appellant contends that Officer Coffman's testimony should have been excluded because there was no scientific testing of the substance seen on the

- 11 -

knit hat. *See* Appellant's brief at 36-37. The trial court disagreed, finding instead, that Officer Coffman's testimony constituted a lay person opinion for which scientific testing is not needed. *See* Trial Court Opinion, 9/12/19, at 12-13. We agree.

Pennsylvania Rule of Evidence 701 addresses the admission of opinion testimony by lay witnesses and provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. Therefore, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences, so long as those opinions are helpful to the factfinder. *Commonwealth v. Barry*, 172 A.3d 1, 3-4 (Pa.Super. 2017).

Appellant argued that the testimony should not have been admitted because it was unsupported by scientific testing. *See* Appellant's brief at 37. However, Appellant's argument misconstrued the nature of the testimony that Officer Coffman related. Importantly, Officer Coffman referred to the substance on the knit hat in the context of her personal observations and experience, not as someone with specialized or scientific knowledge. *See* N.T. Non-Jury Trial, 3/27/19, at 173. Therefore, her testimony was admissible as

it fell within the scope of Pa.R.E. 701, and would have been inadmissible if it had been based on the results of scientific testing. Accordingly, the trial court did not abuse its discretion in permitting Officer Coffman to opine that the substance found on the knit hat was makeup concealer.

In his final claim, Appellant attacks the trial court's determination that he was not an "eligible offender" for the RRRI program, based on his current robbery conviction. *See* Appellant's brief at 37-41. A challenge to a court's failure to impose a RRRI sentence implicates the legality of the sentence. ***Commonwealth v. Tobin***, 89 A.3d 663, 670 (Pa.Super. 2014). "It is legal error to fail to impose a RRRI minimum on an eligible offender." ***Id***. This is a question of statutory interpretation, and as "statutory interpretation implicates a question of law, our scope of review is plenary and our standard of review is *de novo*." ***Commonwealth v. Gerald***, 47 A.3d 858, 859 (Pa.Super. 2012) (citation omitted).

The RRRI Act requires the trial court to determine at the time of sentencing whether the defendant is an "eligible offender." 61 Pa.C.S. § 4505(a). In order to be eligible for RRRI, a defendant must meet the eligibility requirements codified at 61 Pa.C.S. § 4503. Section 4503 explicitly excludes any offenders who have been found guilty of, or have been previously convicted of, personal injury crimes, as defined by the Crime Victims Act. ***See*** 61 Pa.C.S. § 4503(3). The Crime Victims Act's definition of personal injury

crimes includes misdemeanors and felonies committed under Title 18, Chapter 37 of the criminal code, which includes robbery. *See* 18 P.S. § 11.103.

Appellant was convicted of a Title 18, chapter 37 robbery and has a prior conviction for robbery, an offense which is enumerated in the RRRI Act. N.T. Non-Jury Trial, 3/28/19, at 78. Therefore, the trial court properly found Appellant ineligible based on his present and past convictions for robbery.

Appellant counters that since robbery of a financial institution was added to the robbery statute after the RRRI Act was enacted, and the victim in this type of robbery is a financial institution, he did not commit a crime of violence. *See* Appellant's brief at 40. However, the language of the statute is clear. Offenders convicted of robbery are disqualified from RRRI eligibility. Since the enactment of robbery of a financial institution, the legislature has not chosen to make a distinction between different types of robbery for RRRI eligibility purposes, and we will not do so here. Accordingly, we find that the trial court did not err in deeming Appellant RRRI ineligible.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/17/20</u>