J-S17021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERECK JEROME TURNER | : | |
| | : | |
| Appellant | : | No. 2889 EDA 2023 |

Appeal from the PCRA Order Entered October 18, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0007618-2017

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.: **FILED SEPTEMBER 20, 2024**

Appellant, Dereck Jerome Turner, appeals from the order entered in the Bucks County Court of Common Pleas, denying in part his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

A prior panel of this Court set forth the relevant facts and procedural history of this case as follows:

> On June 9, 2017, Thomas Austin ("Austin") conversed with Ivan Paxton ("Paxton"), his neighbor, near the front gate of Austin's property at Elmhurst Avenue in Winder Village, Bristol Township, Bucks County. As they spoke, [Appellant] approached the front gate screaming about an interaction he had with an individual named Sam Love ("Love"). Austin told [Appellant] to leave the area because he was being loud and unruly. [Appellant] left, but shortly thereafter returned holding a knife. Austin again told [Appellant] to leave and attempted to escort [Appellant] off of his property. A brief fight ensued and ended when Austin yelled out, "I'm cut,"

---

[1] 42 Pa.C.S.A. §§ 9541-9541.

after which [Appellant] ran away.

Austin's wife and Paxton called 911. The Bristol Township Police responded and administered first aid to Austin. An ambulance arrived shortly thereafter and transported Austin to Torresdale Hospital. After speaking with Austin's wife, the police searched for [Appellant]. A short time later, the police found [Appellant], who was sweating profusely, and appeared confused and disoriented. [Appellant] told the police that Love had stabbed Austin.

Austin was treated by George Tsiotsias, M.D. ("Dr. Tsiotsias"), who diagnosed Austin with a partially collapsed lung, blood in his chest, a fractured rib, and a lacerated liver. Austin required multiple emergency blood transfusions. Dr. Tsiotsias determined that the injuries were all the result of Austin's stab wound. Austin stayed in the Intensive Care Unit for 9 days.

On December 6, 2017, police charged [Appellant] with two counts of aggravated assault, and one count each of prohibited offensive weapons, possession of an instrument of crime, recklessly endangering another person, simple assault, and harassment.

*Commonwealth v. Turner*, No. 1568 EDA 2019, at 1-2 (filed December 29, 2020) (unpublished memorandum), *appeal denied*, ___ Pa. ___, 257 A.3d 701 (2021).

On June 22, 2018, a jury convicted Appellant of the aforementioned charges. On February 28, 2019, the trial court sentenced Appellant to an aggregate term of 10 to 20 years' incarceration. This Court affirmed Appellant's judgment of sentence on December 29, 2020, and our Supreme Court denied allowance of appeal on June 23, 2001. *See id.*

On March 28, 2022, Appellant *pro se* filed a timely first PCRA petition. The court appointed counsel, who filed an amended petition on Appellant's

behalf. On February 22, 2023, counsel filed a second amended PCRA petition on Appellant's behalf. On May 4, 2023, the PCRA court held an evidentiary hearing. On October 18, 2023, the PCRA court entered an order granting in part and denying in part Appellant's PCRA petition. Specifically, the PCRA court ordered that Appellant was to receive credit for time served from June 10, 2017, through July 1, 2017, and from June 22, 2018, through February 28, 2019. The PCRA court denied Appellant's remaining PCRA claims of ineffective assistance of counsel.

On November 6, 2023, Appellant timely filed a notice of appeal. On November 13, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant complied on November 20, 2023.

Appellant raises the following issues for our review:

> 1. Did [Appellant] receive ineffective assistance of counsel when trial counsel failed to object to inadmissible evidence that [Appellant] was under the influence of an intoxicating substance?
>
> 2. Was trial counsel ineffective for failing to object to inadmissible evidence and Commonwealth argument that improperly bolstered the victim's testimony?

(Appellant's Brief at 3).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795

(2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We do not give the same deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190 (Pa.Super. 2012). Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. **Commonwealth v. Abu-Jamal**, 553 Pa. 485, 720 A.2d 79 (1998), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." **Commonwealth v. Johnson**, 600 Pa. 329, 356-357, 966 A.2d 523, 539 (2009).

Appellant's claims allege trial counsel's ineffectiveness. Pennsylvania law presumes counsel has rendered effective assistance. **Commonwealth v. Williams**, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. **Commonwealth v. Kimball**, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. **Williams, supra**.

"The threshold inquiry in ineffectiveness claims is whether the

issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…" ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004). "Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." ***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [***Kimball, supra***], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

***Commonwealth v. Chambers***, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

In Appellant's first issue, he argues that trial counsel repeatedly failed to object to inadmissible evidence that Appellant was intoxicated while assaulting the victim. Appellant claims that trial counsel stated he did not object because he did not want to call the jury's attention to this evidence,

and the better tactic was to attack the lack of witness statements describing intoxication. Appellant insists this was not a reasonable course of action. Appellant contends that as a result of counsel's inactions, the jury heard inadmissible evidence that he was an irresponsible substance abuser. Appellant concludes trial counsel was ineffective on this basis, and this Court must grant relief. We disagree.

The admission of evidence is within "the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion." *Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). Under Pa.R.E. 701, "if a witness is not testifying as an expert," he may give testimony in the form of an opinion that is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Additionally, lay witnesses may "testify to someone's readily observable physical condition or appearance that does not require medical training." *Commonwealth v. Gause*, 164 A.3d at 532, 537-38 (Pa.Super. 2017) (*en banc*), *appeal denied*, 643 Pa. 188, 173 A.3d 267 (2017) (citations omitted).

"Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." **Commonwealth v. Berry**, 172 A.3d 1, 3-4 (Pa.Super. 2017). Lay testimony has been defined as testimony "intended to describe something that jurors otherwise had not been able to experience for themselves, by drawing upon the sensory and experiential observations that the witness made firsthand." **Commonwealth v. Rose**, 172 A.3d 1121, 1131 (Pa.Super. 2017), *appeal denied*, 646 Pa. 540, 186 A.3d 369 (2018). As such, police officers are permitted to provide lay opinions about a suspect's alcohol-or-narcotic induced intoxication "where the witness is personally familiar with the effects of narcotics." **Commonwealth v. Yedinak**, 676 A.2d 1217, 1221 (Pa.Super. 1996), *appeal denied*, 548 Pa. 618, 693 A.2d 588 (1997).

Instantly, at the PCRA hearing, trial counsel acknowledged that his theory of the case had been self-defense. (**See** N.T. PCRA Hearing, 5/4/23, at 10). Trial counsel stated that he did not object to testimony that Appellant appeared under the influence of drugs because he had not wanted to draw attention to the testimony, particularly because the police officer had given an incorrect description of the drug which was "less harmful" than what it actually was, and because there had been other testimony that Appellant appeared

- 7 -

intoxicated.[2]  (*See id.* at 16-18, 25).  Trial counsel stated that if he questioned Officer Jackson further, "he would … go deeper into the explanation of somebody being intoxicated or under the influence of something."  (*Id.* at 29).  Further, trial counsel believed that Officer Jackson offered permissible lay testimony that Appellant appeared intoxicated.  (*Id.* at 73).

Appellant also questioned trial counsel about his failure to object to Dr. Tsiotsias' testimony that "patient states he was stabbed in the chest by his neighbor who smoked wet."  (*See id.* at 31).  Trial counsel stated that

> right when that came out … the district attorney at the time immediately afterwards stopped him and then moved on. And again, … it was not my intention to harp on that particular issue and call more attention to it because if I understand correctly it moved really quickly and she just cut it off right there.
>
> … Below that, where it indicates, you know, and there are certain observations there.  So it sounds like she tried to, and from what I remember, correct that by moving on really quickly and saying no, that's not, and then moved on.  So I didn't want to call more attention, again to this testimony of wet at that time.

(*Id.* at 31-32).

Regarding Dr. Tsiotsias' testimony, the PCRA court explained:

> The doctor's answer was not solicited by the Commonwealth and the prosecutor quickly moved on.  As defense counsel testified at the PCRA hearing, his goal was to make sure he

_____

[2] Officer Jackson had testified at trial that he believed Appellant was under the influence of "wet," which he described as "embalming fluid."  (N.T. Trial, 6/22/18, at 46-47).  At the PCRA hearing, trial counsel testified that he understood "wet" to be slang for phencyclidine ("PCP").  (N.T. PCRA Hearing, 5/4/23, at 18).

did not highlight what seemed to be an unintended response by objecting to this testimony. Counsel was not ineffective in making this strategic decision.

(PCRA Court Opinion, 12/21/23, at 7-8) (citations omitted).

With respect to Officer Jackson's testimony, the PCRA court explained:

The next day of trial, Officer Kevin Jackson testified about his interaction with Appellant during his arrest. When the officer located Appellant about an hour after the stabbing, the officer repeatedly asked Appellant to "get on the ground." Appellant was acting like the officer was not there. Appellant was "sweating a lot," "rambling" when talking, and repeatedly asked, "What's going on?" When the officer told Appellant that he was under arrest for stabbing his neighbor, Appellant blamed the stabbing on Sam Love, the person whom he was screaming about prior to the stabbing.

(*Id.* at 8-9) (citations omitted). Further, the PCRA court examined Officer Jackson's testimony and observed that "[he] did not testify that Appellant was under the influence of 'wet' but, based on his police experience and interaction with Appellant that day, it was clear to the officer that Appellant was 'under the influence of something'" and that this testimony was admissible lay testimony. (*See id.*) The PCRA court found that trial counsel's strategy of cross-examining Officer Jackson to point out that there was nothing noted in his written police report about Appellant's use of drugs was reasonable. (*Id.* at 9-10). Additionally, the PCRA court noted that Appellant's voluntary intoxication was not raised as a prior bad act to prove Appellant's character, but as relevant testimony to Appellant's behavior on the date of the crime. (*Id.* at 10-11).

Finally, the PCRA court noted that Appellant was not prejudiced by

admission of testimony regarding his intoxication because there was additional evidence that he had not acted in self-defense. (*See id.* at 11-12). Witness testimony established that the victim punched or wrestled Appellant in an attempt to get Appellant to leave his property, Appellant retreated into his house, and Appellant returned with a knife to stab the victim. (*Id.*) (citing N.T. Trial, 6/21/18, at 30-67, 113-126, 145, 153).

The record supports the PCRA court's analysis. Dr. Tsiotsias' testimony was inadvertently elicited and quickly corrected. Trial counsel's strategy not to object and further highlight this testimony was reasonable. *See Pierce, supra*. Additionally, Officer Jackson was able, as a lay witness, to offer his opinion that Appellant was under the influence of some kind of alcohol or narcotic. *See Gause, supra*; *Rose, supra*; *Berry, supra*; *Yedinak, supra*. Because this was admissible lay opinion testimony, it was a reasonable trial strategy to choose not to further emphasize the testimony. *See Pierce, supra*. Therefore, trial counsel was not ineffective on the grounds alleged, and Appellant's first issue merits no relief.

In Appellant's second issue, he argues that trial counsel could not remember why he did not object to inadmissible evidence that vouched for the victim's character and portrayed the victim as a sympathetic and caring man. Specifically, Appellant highlights that Officer Jackson testified that the victim was not present at court because he was attending the funeral of one of Appellant's relatives on the last day of trial. Appellant claims that this

evidence improperly bolstered the victim's character, which in turn could have swayed the jury. Appellant further contends that trial counsel was ineffective for failing to object to the Commonwealth's closing argument mentioning this fact. Because trial counsel could not remember why he did not object to its admission, Appellant maintains there was no reasonable basis for counsel's actions. Appellant concludes trial counsel was ineffective on these grounds, and this Court must grant relief. We disagree.

This Court has explained:

> [Prosecutors have] a special obligation to avoid "improper suggestions, insinuations, and, especially, assertions of personal knowledge…" ***Berger v. United States***, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Such conduct is prohibited because "improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." ***Id.*** …
>
> Generally speaking, it is improper for the prosecution to **vouch** for the credibility of a government witness. Vouching has been characterized in two categories: (1) when the prosecution places the prestige of the government behind the witness by personal assurances of the witness's veracity; and (2) when the prosecution indicates that information which is not before the jury supports the witness's testimony.

***Commonwealth v. Reed***, 446 A.2d 311, 314 (Pa.Super. 1982) (emphasis in original) (some citations omitted).

Instantly, Officer Jackson attempted to testify at trial regarding his on-scene questioning of Roosevelt Marbry, Appellant's step-grandfather and housemate, regarding Appellant's whereabouts after the stabbing. (***See*** N.T.

Trial, 6/22/18, at 21-22). Trial counsel made a hearsay objection, and Officer Jackson explained that Mr. Marbry had just passed away. (***See id.***) Officer Jackson said he was aware of Mr. Marbry's passing because the victim and his wife were "with him," and therefore not present in court. (***Id.***) Officer Jackson then reiterated that Mr. Marbry was unavailable to testify, and trial counsel again objected to the Commonwealth's attempts to introduce hearsay testimony. (***Id.***) At the PCRA hearing, when Appellant questioned trial counsel about his reasoning for not objecting to that testimony, trial counsel stated, "I can't recall at this time." (N.T. PCRA Hearing, 5/4/23, at 53). When asked whether this had helped his trial strategy, trial counsel stated, "I'm not sure." (***See id.***).

In evaluating Appellant's claim of ineffectiveness, the PCRA court observed:

> When looking at the above testimony in context, the Commonwealth questioned the officer this way to persuade this court to allow the officer to testify to Mr. Marbry's statements because Mr. Marbry could not testify because he died a few days prior to trial. Therefore, this particular line of questioning did not seek to bolster the victim's credibility and character but to admit hearsay evidence, which the court did not allow. The Commonwealth also argued the following during its closing argument:
>
>> … [Appellant's] neighbor [the victim Thomas Austin], who, by the way, today … is with [Appellant's] family despite what happened, because they had a death. That's the man Mr. Thomas Austin is, by the way. That's where he is today. Think about that for a minute. That's who he's spending his time with today, despite what's happening.

- 12 -

The prosecutor's comment was a few lines of the Commonwealth's twenty-three-page closing. Nevertheless, even if it could be argued that this was erroneous improper bolstering of the victim's testimony, there was no prejudice to Appellant. It was Appellant's nephew who was the key eyewitness in observing that Appellant went to retrieve a knife, had the knife during the scuffle, and ran away with the knife; the [v]ictim could only testify that he was in a scuffle with Appellant, after which, he realized he was stabbed. Therefore, bolstering the [v]ictim's testimony would have had little effect on the jury's reception of pivotal facts in this case.

In regard to the claim that counsel was ineffective for not objecting to the above portion of the Commonwealth's closing argument, defense counsel testified at the PCRA hearing that his general practice was to refrain from objecting during the prosecutor's closing arguments unless an egregious statement was made by the prosecutor. This is a reasonable decision by defense counsel. This court does not often sustain objections made during closing arguments since, as explained in this court's instruction to the jury during this trial, "[t]he statements of the attorneys are not evidence" and "[t]he questions of the attorneys are not evidence."

(PCRA Court Opinion at 13-14) (citations omitted).

The record supports the court's analysis. As the PCRA court observed, Officer Jackson's testimony mentioning that the victim Mr. Austin was with Appellant's family member who had died was not improper vouching, but merely an attempt by the Commonwealth to introduce hearsay evidence. Further, we agree with the PCRA court that counsel's decision not to object to the prosecutor's closing argument was reasonable, and Appellant cannot demonstrate that he was prejudiced by the closing argument where the uncontradicted testimony of Ivan Paxton also established that Appellant had

stabbed Mr. Austin, as well as corroborated the testimony of Mr. Austin. (**See** N.T. Trial, 6/21/18, at 30-67, 113-126, 145, 153). **See also Williams, supra**; **Chambers, supra**; **Kimball, supra**. Accordingly, we affirm the PCRA court's order denying relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/20/2024